UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

ZSA ZSA JEWELS, INC.          : **Docket No.** 1:15-CV-6519-ILG-RLM
                              :
        *Plaintiff,*          :
                              : **AMENDED COMPLAINT**
        v.                    :
                              :
BMW OF NORTH AMERICA, LLC;    :
BRIDGESTONE AMERICAS TIRE     :   JURY TRIAL DEMANDED
     OPERATIONS, LLC;         :
MORRIS COUNTY AUTO SALES, INC.:
     A/K/A BMW OF MORRISTOWN; and  :
OPEN ROAD OF EDISON, INC.     :
     A/K/A OPEN ROAD BMW,     :
                              :
        *Defendants.*         :
                              :
-------------------------------------------------------x

## INTRODUCTION

1.       Plaintiff Zsa Zsa Jewels, Inc. ("Zsa Zsa Jewels") brings this action

pursuant to various theories of product liability law and common-law negligence,

seeking to recover for the destruction of 95% of its inventory and related losses incurred

when the vehicle that was transporting the company's property suddenly caught fire.

2.      The vehicle in question was a 2012 BMW X3 xDrive28i (the "BMW X3"), which was designed, manufactured, produced, marketed, sold, and/or distributed for sale or lease by Defendant BMW of North America LLC ("BMW N.A.") and Defendant Morris County Auto Sales, Inc. ("BMW of Morristown"). The BMW X3 was outfitted with "self-supporting run-flat tires" (the "SSRF Tires" or the "Tire(s)") as a standard feature, operating as a component of BMW N.A.'s "BMW Approved Run-Flat Tire System," which also included a tire pressure monitoring system ("TPMS"). Defendant Bridgestone Americas Tire Operations, LLC ("Bridgestone") designed, manufactured, distributed, and sold the SSRF Tires, which are among BMW N.A.'s "Approved Tires," marketed by BMW N.A. and BMW of Morristown as having been developed and tested in collaboration with Bridgestone.

3.      The BMW X3 was leased to Meena Catalano, who is the president and sole owner of Plaintiff Zsa Zsa Jewels. Mrs. Catalano occasionally used the BMW X3 for her company, Zsa Zsa Jewels, which is in the business of designing, producing and selling hand-crafted jewelry.

4.      Pursuant to the BMW Ultimate Service Warranty/BMW Maintenance Program, Meena Catalano regularly maintained and serviced the BMW X3 at Defendant

2

Open Road of Edison, Inc. operating, doing business as, or otherwise known as Open Road BMW ("Open Road BMW").

5.       On November 6, 2013, Tiffany Sobers, an employee of Zsa Zsa Jewels, was transporting Zsa Zsa Jewels' merchandise to a trade show in Massachusetts, using the BMW X3. While traveling through Connecticut, the rear passenger-side (right-hand side) SSRF Tire auto-ignited without warning. Ms. Sobers had no warning that the BMW X3's Tire or any other component of the BMW Approved Run-Flat Tire System was failing, or that the SSRF Tire could auto-ignite. The resulting fire spread to the vehicle, destroying the BMW X3 and all of its contents, including Zsa Zsa Jewels' merchandise.

6.       As alleged herein, the ignition of the rear passenger Tire, without warning and under ordinary driving conditions, was caused in whole or in part by:

   a. defects in the Tires, including, but not limited to, the Tires' increased vertical stiffness, which significantly decreased the durability of the Tires and made them more susceptible to catastrophic failures (i.e., bubbling, popping, or otherwise failing) from even small bumps on the road, and/or the generation of friction and heat, which could cause a compromised Tire to auto-ignite without warning;

3

b. defects in the BMW Approved Run-Flat Tire System, including, but not limited to, its failure to alert Ms. Sobers that there was a problem with the rear passenger Tire; and/or

c. the negligence of Open Road BMW, the company providing service and/or maintenance to the BMW X3, in failing to properly inspect, maintain, repair and/or replace the TPMS and/or the SSRF Tires, and/or failing to otherwise follow reasonable steps to ensure that the Tires and/or BMW Approved Run-Flat Tire System were properly serviced when the BMW X3 was in the service shop.

7.        Each of the Defendants was aware of these defects / problems, yet continued to market, distribute, sell, lease, and / or service the BMW X3 Model and its BMW Approved Run-Flat Tire System.

4

## PARTIES, JURISDICTION AND VENUE

8.      The Plaintiff, Zsa Zsa Jewels, is a corporation organized and existing under the laws of the State of New York, with a principal place of business in New York, New York.

9.      The Defendant, Bridgestone, is a Delaware limited liability company registered and authorized to do business in the State of New York and has its principal place of business in Nashville, Tennessee.

10.      The Defendant, BMW N.A., is a Delaware limited liability company registered and authorized to do business in the State of New York and has its principal place of business in Woodcliffe Lake, New Jersey.

11.      The Defendant, BMW of Morristown, is a corporation organized under the laws of the State of New Jersey, operating, doing business as, and otherwise known as BMW of Morristown, and has its principal place of business in Morristown, New Jersey.

12.      The Defendant, Open Road BMW, is a corporation organized under the laws of the State of New Jersey and has its principal place of business in Edison, New Jersey.

5

13.     This court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

14.     This court has personal jurisdiction over the Defendant Bridgestone because it is duly registered to do business in the state of New York, and upon information and belief, does business in New York, transacts business in New York, and/or contracts to supply goods and services in New York, including, but not limited to, engaging in the business of designing, manufacturing, producing, marketing, distributing, and warrantying tires for sale and use on motor vehicles. Upon information and belief, Defendant Bridgestone solicits business in New York, maintains continuous and systemic business contacts with New York, obtains a substantial volume of business and revenue from transactions with New York customers, and employs and relies upon agents and representatives throughout the United States who maintain purposeful, continuous and systemic contacts with the state of New York. Upon information and belief, Defendant Bridgestone also purposefully directs its activities at residents of New York, including advertising and entering into transactions with New York residents, and this litigation results from injuries that arise out of and relate to those activities.

6

15.      This court has personal jurisdiction over the Defendant BMW N.A. because it is duly registered to do business in the state of New York, maintains a registered agent in New York, and upon information and belief, does business in New York, transacts business in New York, and/or contracts to supply goods and services in New York, including, but not limited to, engaging in the business of designing, manufacturing, producing, marketing, distributing, warrantying, leasing and selling motor vehicles, including the BMW X3. Upon information and belief, Defendant BMW N.A. solicits business in New York, maintains continuous and systemic business contacts with New York, obtains a substantial volume of business and revenue from transactions with New York customers, and employs and relies upon agents and representatives throughout the United States who maintain purposeful, continuous and systemic contacts with the state of New York. Upon information and belief, Defendant BMW N.A. also purposefully directs its activities at residents of New York, including advertising and entering into transactions with New York residents, and this litigation results from injuries that arise out of and relate to those activities.

16.      This court has personal jurisdiction over the Defendant BMW of Morristown because, upon information and belief, it does business within the state of New York, transacts business in New York, and/or contracts to supply goods and

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

services in New York, including, but not limited to, the leasing, marketing, distributing, warrantying, and selling of motor vehicles, including the BMW X3. Upon information and belief, BMW of Morristown solicits business in New York, maintains continuous and systemic business contacts with New York, and obtains a substantial volume of business and revenue from transactions with New York customers. Upon information and belief, Defendant BMW of Morristown also purposefully directs its activities at residents of New York, including advertising and entering into transactions with New York residents, and this litigation results from injuries that arise out of and relate to those activities.

17.     This court has personal jurisdiction over the Defendant Open Road BMW because, upon information and belief, it does business within the state of New York, transacts business in New York, and/or contracts to supply goods and services in New York, including but not limited to, the servicing, marketing, distributing, warrantying, leasing, and selling of motor vehicles, including the 2012 production-year BMW X3 xDrive 28i. Upon information and belief, Open Road BMW solicits business in New York, maintains continuous and systemic business contacts with New York, and obtains a substantial volume of business and revenue from transactions with New York customers. Upon information and belief, Defendant Open Road BMW also purposefully

8

directs its activities at residents of New York, including advertising and entering into transactions with New York residents, and this litigation results from injuries that arise out of and relate to those activities.

18.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, for purposes of venue, all Defendants are "residents" of New York and one or more Defendants "reside" in this judicial district, within the meaning of 28 U.S.C. § 1391(c)(2).

## ALLEGATIONS COMMON TO ALL COUNTS

### The November 2013 Vehicle Fire

19.      On or about December 6, 2011, Meena Catalano leased the BMW X3 from BMW of Morristown, an authorized BMW dealership.

20.      The BMW X3 was designed, manufactured, produced, marketed and sold, or distributed for sale or lease by Defendant BMW N.A and Defendant BMW of Morristown.

21.      The BMW X3 was outfitted by BMW N.A., Bridgestone, and/or BMW of Morristown with the SSRF Tires as a standard feature. Defendant Bridgestone designed, manufactured, distributed, and sold the SSRF Tires, which are among BMW

9

N.A.'s "Approved Tires," marketed by BMW N.A. and BMW of Morristown as having been developed and tested in collaboration with Bridgestone.

22.      The BMW X3 was leased by Meena Catalano primarily for personal use and for occasional use for her company, Zsa Zsa Jewels. The business often requires Meena Catalano, her husband Frank Catalano, and other officers, agents and/or employees of Zsa Zsa Jewels to travel throughout the United States and abroad. This includes travelling to large jewelry trade shows hosted in cities throughout the United States, at which Zsa Zsa Jewels' merchandise is showcased and displayed for both point-of-sale individual purchasers and large-scale purchase order sales by large retail re-sellers.

23.      On the evening of November 6, 2013, Meena Catalano, Frank Catalano and their assistant, Tiffany Sobers, were preparing for Zsa Zsa Jewels' showcase and display at InterGem, the International Gem and Jewelry Show, hosted at the Royal Plaza Trade Center in Marlborough, Massachusetts, from November 8, 2013 to November 10, 2013. Mr. and Mrs. Catalano packed Zsa Zsa Jewels' merchandise into several cases, and placed these cases securely in the passenger cabin of the BMW X3. The plan called for Ms. Sobers to drive the BMW X3 to Marlborough, Massachusetts

10

that evening, transporting Zsa Zsa Jewels' merchandise which would be showcased, displayed and sold at InterGem.

24.     Having left Zsa Zsa Jewels' headquarters in New York City, and on her way to InterGem, Ms. Sobers stopped to refuel the BMW X3 in Armonk, NY. At this time, the vehicle appeared to be in good working order – there were no warnings on the BMW X3's dashboard indicating that any of the Tires had low internal air pressure or were actively using their run-flat feature, nor were there any visual or other indications that the BMW X3 was damaged or malfunctioning.

25.     Shortly after refueling in Armonk, NY and while driving on Interstate 84 in Connecticut, Ms. Sobers began to experience strong vibrations in the vehicle, which reverberated through the steering wheel and were accompanied by the vehicle's lack of responsiveness to driver-input from the steering wheel. Ms. Sobers immediately pulled over onto the shoulder and used the vehicle's internal communication system to contact BMW Emergency Roadside Assistance. After pulling onto the shoulder, Ms. Sobers noticed that the "low coolant" warning had illuminated on the dashboard. No other warning indicators on the dashboard were lit.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

26.     While still on the phone with the BMW Emergency Roadside Assistance operator, Ms. Sobers began to smell smoke, and could see the flicker of flames rising from outside of the vehicle's rear passenger (right-hand) side. Fearing for her life, Ms. Sobers immediately evacuated the vehicle, leaving her personal belongings and Zsa Zsa Jewels' merchandise inside the vehicle, and dialed "911" from her mobile phone.

27.     By the time the Connecticut State Police and Middlebury Fire Department had arrived, which according to the police report, was within minutes after receiving Ms. Sober's call, the BMW X3 was fully-engulfed in fire.

28.     As a result of the fire, the BMW X3 and all of Zsa Zsa Jewels' merchandise inside of the BMW X3 were totally destroyed. Said merchandise included one-of-a-kind collections comprised of rare jewels. The collections of jewelry in the BMW X3 fire, which were to be exhibited at InterGem and comprised over 95% of the total merchandise inventory of Zsa Zsa Jewels, were destroyed and unsalvageable. This handcrafted jewelry represented thousands of irreplaceable hours of material sourcing, designing, manufacturing, marketing and related work. The result of the fire and the destruction therefrom was a catastrophic loss to the Plaintiff.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

## The Cause / Origin of the Fire

29.      The cause and origin of the fire was auto-ignition of the rear passenger-side (right-hand side) SSRF Tire, resulting from the friction and heat generated by the catastrophic failure of the SSRF Tire.

30.      According to the marketing, advertising, and other representations of BMW N.A., Bridgestone and/or BMW of Morristown, the SSRF Tires, unlike conventional radial tires, were specifically designed to be driven even after the air is depleted from the tire to provide a driver sufficient time to travel to a repair shop or safe location after the tire has been punctured or damaged.  The Operator's Manual for the BMW X3, for example, instructs drivers, *inter alia*:

   a.  **"Tire Pressure Monitor TPM.**  The tire inflation pressure is measured in the four mounted tires.  The system notifies you if there is a significant loss of pressure in one or more tires."

   b.  **"FTM Flat Tire Monitor.**  The system does not measure actual inflation pressure in the tires.  It detects a pressure loss in a tire by comparing the rotational speeds of the individual wheels while moving.  **In the event of a pressure loss, the diameter and therefore the rotational speed of the**

**corresponding wheel change.  This is detected and reported as a flat tire**."

   c.  **"Actions in the event of a flat tire.**  You can continue driving with a damaged tire at speeds up to 50mph/80km/h."

31.     Bridgestone's website advertises and represents that a driver can continue driving on its run-flat tires even after a loss of some or all inflation pressure for 50 miles/80 kilometers at a speed of up to 50mph/80km/hr.

32.     The SSRF Tires are described and advertised by BMW N.A., Bridgestone and/or BMW of Morristown as having been designed and manufactured with reinforced sidewalls, so that the tires can resist the effects of deflation, operating as a component of BMW N.A.'s "BMW Approved Run-Flat Tire System," which includes the SSRF Tires, "extended hump wheels" to secure the tire to the wheel in case of sudden pressure loss, and a tire pressure monitoring system ("TPMS"), each of which is a necessary component of vehicles which are equipped with SSRF Tires. Without such a TPMS warning indicator for the driver, for example, a driver may not notice that a tire has lost air pressure.

14

33.     The SSRF Tires were a standard feature on the BMW X3.  BMW N.A.,

Bridgestone and/or BMW of Morristown marketed and promoted the Tires as providing

drivers with "extended mobility" - the ability to continue driving when the Tire has been

punctured or otherwise compromised. While a deflated run-flat tire cannot be driven on

indefinitely, the Defendants represented that even after a flat, a driver may continue to

drive on the Tires for 50 miles at 50 mph.

34.     At all relevant times, Ms. Sobers was operating the BMW X3 under normal

conditions, and using the Tires as they were intended to be used.

35.     Despite this, the rear passenger tire auto-ignited from the additional heat

and friction which was generated by the catastrophic failure of the right rear passenger

SSRF Tire. Ms. Sobers had no warning that the BMW X3's Tire or any other component

of the BMW Approved Run-Flat Tire System was failing or that the SSRF Tire could

auto-ignite.

36.     None of the Defendants has provided any warning that the BMW X3's

SSRF Tires can auto-ignite due to the increased heat and friction generated in the

SSRF Tires, nor has any Defendant provided warnings that a failure of any or all of the

15

BMW Approved Run-Flat Tire System creates the risk that the SSRF Tire will not work as represented or otherwise become dangerous and unstable.

37.     The ignition of the rear passenger Tire, without warning and under ordinary driving conditions, was caused in whole or in part by one or more of the following:

a.  defects in the Tires, including, but not limited to, the Tires' increased vertical stiffness, which significantly decreased the durability of the Tires and made them more susceptible to catastrophic failures (i.e., bubbling, popping, or otherwise failing) from even small bumps on the road, and/or the generation of friction and heat, which could cause a compromised Tire to auto-ignite without warning;

b.  defects in the BMW Approved Run-Flat Tire System, including, but not limited to, its failure to alert Ms. Sobers that there was low tire pressure or that any tire was flat; and/or

c.  the negligence of Open Road BMW, the company providing service and/or maintenance to the BMW X3, in failing to properly inspect, maintain, repair and/or replace the TPMS and/or the SSRF Tires, and/or failing to otherwise

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

follow reasonable steps to ensure that the Tires and/or BMW Approved Run-Flat Tire System were properly serviced when the BMW X3 was in the service shop.

38.     Each of the Defendants was aware of these defects / problems, yet continued to market, distribute, sell, lease, and / or service the BMW X3 and its BMW Approved Run-Flat Tire System.

39.     The above-described dangerous defects / problems caused the BMW X3 and all of its contents to be completely engulfed in flames within tens of seconds of Ms. Sobers making an emergency stop on the shoulder of Interstate 84, resulting in catastrophic loss to Zsa Zsa Jewels.

## Count One:
### Strict Products Liability
### *(against Bridgestone)*

40.     Each of the allegations set forth in Paragraphs 1-39 are re-alleged and re-incorporated as if fully set forth herein.

17

41.     Defendant Bridgestone was, at all relevant times, engaged in the business of designing, manufacturing, producing, marketing, distributing, and warrantying tires, including the SSRF Tires.

42.     Bridgestone designed and/or manufactured the Tires in a defective manner. This resulted in serious and dangerous defects in the Tires, including, but not limited to, the fact that under normal operating conditions, the Tires were prone to deflate, pop or "bubble," and that the Tires may generate enough friction and heat to auto-ignite without warning.

43.     The Tires were therefore in a defective and unreasonably dangerous condition, and could not be used without unreasonable risk of injury to the Plaintiff.

44.     The Tires were expected to and did reach the Plaintiff without substantial change in the condition from which they were manufactured and sold.

45.     At all relevant times, the Tires were used as they were intended to be used, under normal driving conditions, and the defects in the Tires could not have been discovered by consumers, including the Plaintiff through the exercise of reasonable care.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

46.     At the time that Bridgestone designed, manufactured, produced, marketed, distributed, and warrantied its Tires, Bridgestone knew or should have known that its product was defective and unreasonably dangerous.

47.     Despite that knowledge, Bridgestone failed to adequately warn consumers, including the Plaintiff, at any time of the substantial risk that the Tires were dangerous, and instead continued to manufacture, produce, distribute, and market the defective Tires.

48.     Despite marketing its SSRF Tires as providing extended mobility, Bridgestone has never disclosed the above-described dangerous defects in its Tires. Rather, Bridgestone misrepresented to the Plaintiff and the general public that the Tires were safe for use by the public.

49.     As a direct and proximate result of the above-described conduct by Defendant Bridgestone, the rear passenger Tire caught fire without warning, resulting in the destruction of the BMW X3 and all of its contents, including the Plaintiff's merchandise.

19

50.     Accordingly, Defendant Bridgestone is strictly liable for the substantial general and special damages suffered as a direct and proximate result of its conduct. Such damages include, but are not limited to:

a.  The loss of the value of the destroyed jewelry, including jewels and settings, which represented 95% of the inventory of Zsa Zsa Jewels;

b.  The loss of profits due to, *inter alia*, the inability to sell the merchandise which was destroyed;

c.  The loss of the ability to make and sell new products due to the destruction of settings and stones;

d.  The disruption of the development and sale of new jewelry product lines;

e.  The disruption of the ability to develop new business contacts due to disruption in cash flow from the loss of display items and inventory;

f.  The loss of jewelry stones and merchandise unique to the items made; and

g.  The loss of the opportunity to attend shows and to develop business because of the destruction of inventory.

20

51.     Plaintiff also seeks punitive damages, on the basis that Defendant Bridgestone's conduct, including its continued manufacture, marketing and sale of the defective Tires despite knowledge of their dangerous propensities, manifested a conscious disregard of the rights of others, or conduct so reckless as to amount to such disregard.

### Count Two:
### Negligence
### *(against Bridgestone)*

52.     Each of the allegations set forth in Paragraphs 1-39, and 41-49 are re-alleged and re-incorporated as if fully set forth herein.

53.     Defendant Bridgestone had a duty to use due and reasonable care for the safety and property of Plaintiff, in designing, manufacturing, testing, producing, marketing, and/or distributing its Tires.

54.     Defendant Bridgestone breached its duty of due and reasonable care in that it negligently and carelessly designed, manufactured, produced, marketed, and/or distributed the Tires, and/or negligently failed to properly and adequately test the Tires prior to marketing, selling and/or distributing them, resulting in the Tires being unsafe and hazardous in that they could, *inter alia*, cause a fire without warning.

21

55.     At the time Defendant Bridgestone designed, manufactured, tested, produced, marketed, and/or distributed the Tires, Bridgestone, in the exercise of reasonable care, knew or should have known of the unsafe and hazardous condition of its product.

56.     Defendant Bridgestone knew or should have known that its negligent acts or omissions would cause severe damage to Plaintiff.

57.     Despite that knowledge, Defendant Bridgestone failed to warn consumers, including the Plaintiff, at any time of the substantial risk of damage created by the Tires, or to take other action to eliminate the substantial dangers and hazards that Bridgestone had created.

58.     As a direct and proximate result of Defendant Bridgestone's conduct, Plaintiff has suffered substantial general and special damages, including, but not limited to:

a.  The loss of the value of the destroyed jewelry, including jewels and settings, which represented 95% of the inventory of Zsa Zsa Jewels;

22

b.   The loss of profits due to, *inter alia*, the inability to sell the merchandise which was destroyed;

c.   The loss of the ability to make and sell new products due to the destruction of settings and stones;

d.   The disruption of the development and sale of new jewelry product lines;

e.   The disruption of the ability to develop new business contacts due to disruption in cash flow from the loss of display items and inventory;

f.   The loss of jewelry stones and merchandise unique to the items made; and

g.   The loss of the opportunity to attend shows and to develop business because of the destruction of inventory.

### Count Three:
### Strict Products Liability
### *(against BMW N.A.)*

59.   Each of the allegations set forth in Paragraphs 1-39 are re-alleged and re-incorporated as if fully set forth herein.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

60.    Defendant BMW N.A. was, at all relevant times, engaged in the business of designing, manufacturing, marketing, selling, leasing and/or distributing for sale and/or lease its automobiles, including the BMW X3 equipped with SSRF Tires.

61.    BMW N.A. designed and/or manufactured the BMW X3 with serious and dangerous defects, including but not limited to:

a.  Defects in the Tires equipped on the BMW X3, which under normal operating conditions, were prone to deflate, pop or "bubble," or could generate enough friction and heat to auto-ignite without warning; and/or

b.  Defects in the BMW X3's TPMS and BMW Approved Run-Flat Tire System, which, under normal driving conditions, could fail to alert the vehicle's operator of an imminent catastrophic failure of one or more the BMW X3's SSRF Tires.

62.    The BMW X3 was therefore in a defective and unreasonably dangerous condition, and could not be used without unreasonable risk of injury to the Plaintiff.

63.    The BMW X3 was expected to and did reach the Plaintiff without substantial change in the condition from which it was manufactured and sold.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

64.     At all relevant times, the BMW X3 was used as it was intended to be used, under normal driving conditions, and the defects in the BMW X3 could not have been discovered by consumers, including the Plaintiff, through the exercise of reasonable care.

65.     At the time that BMW N.A. designed, manufactured, marketed, sold, leased, and distributed the BMW X3 for sale and lease, BMW N.A. knew or should have known that its product was defective and unreasonably dangerous.

66.     Despite that knowledge, BMW N.A. failed to adequately warn consumers, including the Plaintiff, at any time of the substantial risk that the BMW X3, equipped with SSRF Tires and TPMS, was dangerous, and instead continued to manufacture, market, sell, lease, and distribute the defective BMW X3.

67.     Despite marketing the BMW X3 equipped with SSRF Tires as providing extended mobility, BMW N.A. has never disclosed the above-described dangerous defects in the BMW X3. Rather, BMW N.A. misrepresented to the Plaintiff and the general public that the BMW X3 was safe for use by the public.

68.     As a direct and proximate result of the above-described conduct by Defendant BMW N.A., the rear passenger Tire caught fire without warning, resulting in

25

the destruction of the BMW X3 and all of its contents, including the Plaintiff's merchandise.

69.     Accordingly, Defendant BMW N.A. is strictly liable for the substantial general and special damages suffered as a direct and proximate result of its conduct. Such damages include, but are not limited to:

a.  The loss of the value of the destroyed jewelry, including jewels and settings, which represented 95% of the inventory of Zsa Zsa Jewels;

b.  The loss of profits due to, *inter alia*, the inability to sell the merchandise which was destroyed;

c.  The loss of the ability to make and sell new products due to the destruction of settings and stones;

d.  The disruption of the development and sale of new jewelry product lines;

e.  The disruption of the ability to develop new business contacts due to disruption in cash flow from the loss of display items and inventory;

f.  The loss of jewelry stones and merchandise unique to the items made; and

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

g.   The loss of the opportunity to attend shows and to develop business because of the destruction of inventory.

70.   Plaintiff also seeks punitive damages, on the basis that Defendant BMW N.A.'s conduct, including its continued manufacture, marketing and sale of the defective BMW X3 despite knowledge of its dangerous propensities, manifested a conscious disregard of the rights of others, or conduct so reckless as to amount to such disregard.

**Count Four:**
**Negligence**
**(against BMW N.A.)**

71.   Each of the allegations set forth in Paragraphs 1-39 and 60-68 are re-alleged and re-incorporated as if fully set forth herein.

72.   Defendant BMW N.A. had a duty to use due and reasonable care for the safety and property of Plaintiff, in designing, manufacturing, marketing, selling, leasing and distributing for sale and lease its automobiles, including the BMW X3.

73.   Defendant BMW N.A. breached its duty of due and reasonable care in that it negligently and carelessly designed, manufactured, tested, marketed, sold, leased, and/or distributed the BMW X3, and/or negligently failed to properly and adequately test

27

the BMW X3 prior to marketing, selling and/or distributing it, causing the BMW X3 to be unsafe and hazardous in that, *inter alia*, its Tires could auto-ignite without warning.

74.     At the time Defendant BMW N.A. designed, manufactured, tested, marketed, sold, leased, and distributed the BMW X3, BMW N.A., in the exercise of reasonable care, knew or should have known of the unsafe and hazardous condition of its product.

75.     Defendant BMW N.A. knew or should have known that its negligent acts or omissions would cause severe damage to Plaintiff.

76.     Despite that knowledge, Defendant BMW N.A. failed to warn consumers, including the Plaintiff, at any time of the substantial risk of damage created by the BMW X3, or to take other action to eliminate the substantial dangers and hazards that BMW N.A. had created.

77.     As a direct and proximate result of Defendant BMW N.A.'s conduct, Plaintiff has suffered substantial general and special damages, including, but not limited to:

28

a. The loss of the value of the destroyed jewelry, including jewels and settings, which represented 95% of the inventory of Zsa Zsa Jewels;

b. The loss of profits due to, inter alia, the inability to sell the merchandise which was destroyed;

c. The loss of the ability to make and sell new products due to the destruction of settings and stones;

d. The disruption of the development and sale of new jewelry product lines;

e. The disruption of the ability to develop new business contacts due to disruption in cash flow from the loss of display items and inventory;

f. The loss of jewelry stones and merchandise unique to the items made; and

g. The loss of the opportunity to attend shows and to develop business because of the destruction of inventory.

**Count Five:**
**Strict Products Liability**
*(against BMW of Morristown)*

29

78.     Each of the allegations set forth in Paragraphs 1-39 are re-alleged and re-incorporated as if fully set forth herein.

79.     Defendant BMW of Morristown was, at all relevant times, engaged in the business of selling, leasing, and/or marketing automobiles, including the BMW X3.

80.     BMW of Morristown sold, leased, and marketed the BMW X3 despite the fact that it contained serious and dangerous defects, including, but not limited to:

a.  Defects in the Tires equipped on the BMW X3, which under normal operating conditions, were prone to deflate, pop or "bubble," or could generate enough friction and heat to auto-ignite without warning; and/or

b.  Defects in the BMW X3's TPMS and BMW Approved Run-Flat Tire System, which, under normal driving conditions, could fail to alert the vehicle's operator of an imminent catastrophic failure of one or more the BMW X3's SSRF Tires.

81.     The BMW X3 was therefore in a defective and unreasonably dangerous condition, and could not be used without unreasonable risk of injury to the Plaintiff.

82.     The BMW X3 was expected to and did reach the Plaintiff without substantial change in the condition from which it was manufactured and sold.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

83.     At all relevant times, the BMW X3 was used as it was intended to be used, under normal driving conditions, and the defects in the BMW X3 could not have been discovered by consumers, including the Plaintiff, through the exercise of reasonable care.

84.     At the time that BMW of Morristown sold, leased, and marketed the BMW X3, BMW of Morristown knew or should have known that its product was defective and unreasonably dangerous.

85.     Despite that knowledge, BMW of Morristown failed to adequately warn consumers, including the Plaintiff, at any time of the substantial risk that the BMW X3, equipped with SSRF Tires and TPMS, was dangerous, and instead continued to sell, lease, and market the defective BMW X3.

86.     Despite marketing the BMW X3 equipped with SSRF Tires as providing extended mobility, BMW of Morristown has never disclosed the above-described dangerous defects in the BMW X3. Rather, BMW of Morristown misrepresented to the Plaintiff and the general public that the BMW X3 was safe for use by the public.

87.     As a direct and proximate result of the above-described conduct by Defendant BMW of Morristown, Meena Catalano leased the defective BMW X3, which

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

malfunctioned and caught fire without warning, resulting in the destruction of the BMW X3 and all of its contents, including the Plaintiff's merchandise.

88.     Accordingly, Defendant BMW of Morristown is strictly liable for the substantial general and special damages suffered as a direct and proximate result of its conduct. Such damages include, but are not limited to:

a.   The loss of the value of the destroyed jewelry, including jewels and settings, which represented 95% of the inventory of Zsa Zsa Jewels;

b.   The loss of profits due to, inter alia,  the inability to sell the merchandise which was destroyed;

c.   The loss of the ability to make and sell new products due to the destruction of settings and stones;

d.   The disruption of the development and sale of new jewelry product lines;

e.   The disruption of the ability to develop new business contacts due to disruption in cash flow from the loss of display items and inventory;

f.   The loss of jewelry stones and merchandise unique to the items made; and

32

g. The loss of the opportunity to attend shows and to develop business because of the destruction of inventory.

89.     Plaintiff also seeks punitive damages, on the basis that Defendant BMW of Morristown's conduct, including its continued sale, leasing, and marketing of the defective BMW X3 model despite knowledge of its dangerous propensities, manifested a conscious disregard of the rights of others, or conduct so reckless as to amount to such disregard.

**Count Six:**
**Negligence**
***(against BMW of Morristown)***

90.     Each of the allegations set forth in Paragraphs 1-39 and 79-87 are re-alleged and re-incorporated as if fully set forth herein.

91.     Defendant BMW of Morristown had a duty to use due and reasonable care for the safety and property of Plaintiff, in selling, leasing, and marketing automobiles, including the BMW X3.

92.     Defendant BMW of Morristown breached its duty of due and reasonable care in that it negligently and carelessly marketed, sold, and/or leased the BMW X3, and/or negligently failed to properly and adequately test or inspect the BMW X3 prior to

33

marketing, selling and/or leasing it, resulting in the distribution of an unsafe and hazardous BMW X3 vehicle in that, *inter alia*, its Tires could auto-ignite without warning.

93.    At the time Defendant BMW of Morristown sold, leased, and marketed the BMW X3, BMW of Morristown, in the exercise of reasonable care, knew or should have known of the unsafe and hazardous condition of its product.

94.    Defendant BMW of Morristown knew or should have known that its negligent acts or omissions would cause severe damage to Plaintiff.

95.    Despite that knowledge, Defendant BMW of Morristown failed to warn consumers, including the Plaintiff, at any time of the substantial risk of damage created by the BMW X3, or to take other action to eliminate the substantial dangers and hazards that BMW of Morristown had created.

96.    As a direct and proximate result of Defendant BMW N.A.'s conduct, Plaintiff has suffered substantial general and special damages, including, but not limited to:

   a.  The loss of the value of the destroyed jewelry, including jewels and settings, which represented 95% of the inventory of Zsa Zsa Jewels;

34

b.  The loss of profits due to, inter alia,  the inability to sell the merchandise which was destroyed;

c.  The loss of the ability to make and sell new products due to the destruction of settings and stones;

d.  The disruption of the development and sale of new jewelry product lines;

e.  The disruption of the ability to develop new business contacts due to disruption in cash flow from the loss of display items and inventory;

f.  The loss of jewelry stones and merchandise unique to the items made; and

g.  The loss of the opportunity to attend shows and to develop business because of the destruction of inventory.

**Count Seven:**
**Negligence**
***(against Open Road BMW)***

97.     Each of the allegations set forth in Paragraphs 1-39 are re-alleged and re-incorporated as if fully set forth herein.

35

98.     The BMW X3 was covered under the BMW Ultimate Service Warranty/BMW Maintenance Program, and, under this program, Meena Catalano regularly maintained and serviced her leased BMW X3 at Open Road BMW.

99.     Further, Open Road BMW was the last entity to inspect, service, and/or reset the subject BMW X'3 BMW Approved Run-Flat Tire System and/or the components thereof, including, but not limited to, its TPMS.

100.    On or about November 6, 2013, the right-hand side rear passenger Tire of the BMW X3 malfunctioned and/or auto-ignited without warning and under ordinary driving conditions, causing the vehicle to catch fire, which resulted in substantial losses to the Plaintiff.

101.    Defendant Open Road BMW had a duty to use due and reasonable care for the safety and property of Plaintiff in servicing the BMW X3.

102.    Defendant Open Road BMW breached its duty of due and reasonable care in that it negligently and carelessly:

*Rome McGuigan, P.C. • Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

a. failed to properly inspect the BMW X3, including the BMW Approved Run-Flat Tire System and/or the components thereof, when it was brought in for maintenance;

b. failed to properly replace and/or repair the BMW Approved Run-Flat Tire System and/or the components thereof; and/or

c. failed to discover and address malfunctions in the BMW Approved Run-Flat Tire System and/or the components thereof, including the TPMS and SSRF Tires.

103.   As a direct and proximate result of Defendant Open Road BMW's negligence, the Plaintiff suffered general and special damages, including, but not limited to:

a. The loss of the value of the destroyed jewelry, including jewels and settings, which represented 95% of the inventory of Zsa Zsa Jewels;

b. Costs to replace the destroyed jewelry, including jewelry stones and settings.

c. The loss of profits due to, *inter alia,* the inability to sell the merchandise which was destroyed;

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

d.  The loss of the ability to make and sell new products due to the destruction of settings and stones;

e.  The disruption of the development and sale of new jewelry product lines;

f.  The disruption of the ability to develop new business contacts due to disruption in cash flow from the loss of display items and inventory;

g.  The loss of jewelry stones and merchandise unique to the items made; and

h.  The loss of the opportunity to attend shows and to develop business because of the destruction of inventory.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff claims damages in an amount not less than $5,677,114.00 for the following:

a.  Money Damages;

b.  Punitive Damages pursuant to the common law;

c.  Attorneys' fees and costs; and

d.  Such other relief as to law or equity pertains.

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726

Plaintiff demands a trial by jury on all counts.

Dated:  June 14, 2016

ZSA ZSA JEWELS, INC.
By Its Attorneys,

ROME MCGUIGAN, P.C.

BY:_____/S/_____
John R. Downey
Rome McGuigan, P.C.
One State Street
Hartford, CT 06103
Tel: (860)-549-1000
Fax: (860)-724-3921
Email: jdowney@rms-law.com

TAYAR, SHUMAN & ASSOCIATES LLP
David J. Tayar
Will Shuman
36 East 36th Street, Suite 1A
New York, NY 10016
Phone:  917-525-5156
Email: dtayar@tayarshuman.com
Email: wshuman@tayarshuman.com

*Attorneys for Plaintiff*

*Rome McGuigan, P.C.* • *Attorneys at Law*
One State Street • Hartford, Connecticut 06103-3101 • (860) 549-1000 • Fax (860) 724-3921 • Juris No. 27726