UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ZSA ZSA JEWELS, INC.,

                          Plaintiff,

- against -

BMW OF NORTH AMERICA, LLC; BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC; MORRIS COUNTY AUTO SALES, INC. A/K/A BMW OF MORRISTOWN; and OPEN ROAD OF EDISON, INC. A/K/A OPEN ROAD BMW,

                          Defendants.

Civil case no.:
1:15-cv-06519 (ILG) (RLM)

---

## DEFENDANT BMW OF NORTH AMERICA, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN EXPERT DISCOVERY

Joseph Kim, Esq.

BIEDERMANN HOENIG SEMPREVIVO,
A Professional Corporation

One Grand Central Place
60 East 42nd Street, Suite 660
New York, New York 10165
Tel: (646) 218-7560
Joseph.Kim@lawbhs.com

*Attorneys for Defendant
BMW of North America, LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ i

PRELIMINARY STATEMENT ....................................................................................................... 1

ARGUMENT –
PLAINTIFF'S REQUEST TO REOPEN EXPERT DISCOVERY SHOULD BE DENIED ........ 2

    1.   Imminence of Trial ................................................................................................. 3

    2.   Plaintiff's Request Is Opposed ............................................................................... 3

    3.   Defendant Would Be Prejudiced ........................................................................... 3

    4. & 5. Plaintiff Was Not Diligent and Has No Foreseeability Excuse ................................. 8

    6.   Reopening Expert Discovery Will Not Lead to Relevant Evidence ............................. 13

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

## Cases

*Associated Elec. Gas Ins. Servs. v. Babcock & Wilcox Power Generation Grp., Inc.*, No. 11-CV-715, 2013 WL 5771166 (D. Conn. Oct. 24, 2013)........................................... 6

*Bermudez v. City of New York*, No. 15CV3240KAMRLM, 2019 WL 136633 (E.D.N.Y. Jan. 8, 2019)........................... 5

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No. 01-CV-11295, 2003 WL 22471909 (S.D.N.Y. Oct. 31, 2003) ................................ 6

*Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996) ..................... 5

*Gem Fin. Serv., Inc. v. City of New York*, No. 13CV1686MKBRER, 2019 WL 8014411 (E.D.N.Y. Apr. 18, 2019)..................... 2, 4, 9

*Giordano v. PGT Indus., Inc.*, No. 04-CV-9246, 2007 WL 4233002 (S.D.N.Y. Nov. 30, 2007) ..................................... 7

*Grochowski v. Phoenix Const.*, 318 F.3d 80 (2d Cir. 2003)................................................................................... 8-9

*Krawec v. Kiewit Constructors Inc.*, No. 11-CV-0123 (LAP), 2013 WL 1104414 (S.D.N.Y. Mar. 1, 2013)............................ 7

*Lab Crafters, Inc. v. Flow Safe, Inc.*, No. 03-CV-4025, 2007 WL 7034303 (E.D.N.Y. Oct. 26, 2007) ..................................... 6

*Liberty Mut. Fire Ins. Co. v. Omega Flex, Inc.*, No. 13-CV-203, 2013 WL 6047203 (D. Conn. Nov. 14, 2013) ....................................... 6

*Mahoney v. Keyspan Corp.*, No. 04-CV-0554, 2007 WL 1651853 (E.D.N.Y. June 6, 2007)........................................ 6

*Mileski v. Long Island R. R. Co..*, 499 F.2d 1169 (2d Cir. 1974)............................................................................... 5

*Moroughan v. County of Suffolk*, 320 F. Supp. 3d 511 (E.D.N.Y. 2018) ......................................................................... 9

*Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*, No. 05-CV-776 (DRH) (AKT), 2008 WL 4415263 (E.D.N.Y. Sept. 24, 2008)..................... 2

*Ramirez v. N.Y.C. Off-Track Betting Corp.*,
   112 F.3d 38 (2d Cir. 1997) ............................................................................................... 5

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
   No. 94-CV-5587, 2002 WL 31780188 (S.D.N.Y. Dec. 11, 2002) ............................................ 7

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
   118 F.3d 955 (2d Cir. 1997) .............................................................................................. 4

*Thomas v. Medco*,
   No. 95-CV-8401, 1998 WL 542321 (S.D.N.Y. Aug. 26, 1998) .............................................. 5

*Torres v. DeMatteo Salvage Co., Inc.*,
   No. 2:14-cv-00774, 2016 WL 845326 (E.D.N.Y. Mar. 2, 2016) ....................................... 3-4, 7

*Valentin v. County of Suffolk*,
   342 F. App'x 661 (2d Cir. 2009) ........................................................................................ 7

**Statutes**

Fed. R. Civ. P. 11 ................................................................................................. 1, 3, 9, 11-12

Fed. R. Civ. P. 16(b)(4) ............................................................................................................ 2

Fed. R. Civ. P. 37(c) .............................................................................................................. 14

Defendant BMW of North America, LLC ("BMW NA" or "Defendant"), by and through its attorneys, Biedermann Hoenig Semprevivo, a Professional Corporation, respectfully submits this memorandum of law in opposition to Plaintiff's motion to reopen expert discovery.

## PRELIMINARY STATEMENT

Discovery has long been closed in this matter—since February 1, 2018 when expert depositions were concluded. Since then, the Court has narrowed the issues to be tried by rendering decisions on Defendant's summary judgment and Rule 11 motions. (ECF Doc. Nos. 97, 101, and 119). The parties should be scheduling a trial for the remaining issues. Instead—having failed to establish damages in the desired range of $5.6 million with their initially preferred (and legally baseless) theory of lost profits and/or gross revenue projections, and apparently unhappy with their potential damages when calculated in accordance with the law (replacement cost or diminution in value of the alleged goods)—Plaintiff now seeks to forestall the resolution of this case by moving to reopen discovery to submit a new (and still undisclosed) expert and report in support of a different theory of damages.

Plaintiff has proffered multiple experts in this action, including one on the topic of damages which has never been withdrawn. There is no excuse for its failure to disclose other experts or to develop other theories while discovery was open. Indeed, Plaintiff deliberately and tactically chose to explore and litigate damages in the manner that it did. Having already had a full opportunity to litigate its damages, it would be palpably unfair and prejudicial to permit Plaintiff to have another 'bite at the apple'. Furthermore, to the extent that it can be understood, Plaintiff's new theory has no support within the existing record. Thus, Plaintiff's motion should be denied in its entirety.

## ARGUMENT

## PLAINTIFF'S REQUEST TO REOPEN EXPERT DISCOVERY SHOULD BE DENIED

The Federal Rules of Civil Procedure allow for the modification of a district court's scheduling order "only for good cause." Fed. R. Civ. P. 16(b)(4). "The party seeking to reopen discovery bears the burden of showing the presence of good cause and the absence of 'ample opportunity to pursue the evidence during discovery.'" *Gem Fin. Serv., Inc. v. City of New York*, No. 13CV1686MKBRER, 2019 WL 8014411, at *2 (E.D.N.Y. Apr. 18, 2019) (quoting *Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*, No. 05-CV-776 (DRH) (AKT), 2008 WL 4415263, at *3 (E.D.N.Y. Sept. 24, 2008)). This Court has adopted a six-part test for motions to reopen discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*Gem Fin. Serv.*, 2019 WL 8014411, at *2 (quoting *Pharmacy, Inc.*, 2008 WL 4415263, at *2).

As an initial matter, Plaintiff has had an ample opportunity to pursue expert discovery. Plaintiff's expert discovery deadlines have been extended multiple times in this action, in part, at Plaintiff's request. *See* (12/15/17 Electronic Order ("final extension")); (7/26/17 Mem. & Order, at p. 2, ECF Doc. No. 68 ("4th extension")); (4/13/17 Electronic Order ("3rd extension")); (2/28/17 Electronic Order ("2nd extension")); (10/20/16 Electronic Order ("1st extension")). As the Court noted in the April 3, 2018 Memorandum & Order, "fact discovery closed on August 25, 2017; the exchange of expert disclosures concluded on October 16, 2017; [and] expert depositions concluded on February 1, 2018." (4/3/18 Mem. & Order, at p. 1-2, ECF Doc. No. 89). Plaintiff used this time to submit reports for multiple experts, including the report of their damages expert Anthony Mauriello. (Ex. A, Mr. Mauriello's 6/2/17 report disclosed by Plaintiff on 8/8/17).

2

As for the factors used to assess a request to reopen discovery, Plaintiff satisfies none but perhaps one of the six factors, and critically fails to satisfy the diligence factor.

### 1. Imminence of Trial

Although this matter is beyond the summary judgment stage, no trial date has yet been scheduled. This is, in large part, due to Plaintiff's conduct post-summary judgment.

Defendant's summary judgment motion was granted in part and denied in part by the Court on October 11, 2019. (ECF Doc. No. 97). Plaintiff then made a baseless motion for reconsideration which the Court denied on November 5, 2019. (ECF Doc. No. 101). Plaintiff also wasted several months by refusing Defendant's multiple Rule 11 requests to amend the pleadings and damages claim to conform to Plaintiff's admissions and other record evidence. This forced Defendant to file its Rule 11 sanctions motion on December 9, 2019, which the Court granted on April 2, 2020. (ECF Doc. No. 119). On May 1, 2020, Plaintiff filed a Notice of Appeal, attempting to appeal the April 2, 2020 Order, an apparent further attempt to stall the resolution of this matter. (ECF Doc. No. 121).

Plaintiff should not be permitted to benefit from its own vexatious and dilatory actions. As such, this factor should not weigh in favor of Plaintiff's bid to reopen discovery, but if it does, it should only slightly weigh in Plaintiff's favor.

### 2. Plaintiff's Request Is Opposed

Plaintiff acknowledges that Defendant BMW NA opposes Plaintiff's request to reopen discovery, and that this factor therefore weighs against Plaintiff. (Pl.'s Mem., at 9).

### 3. Defendant Would Be Prejudiced

Apparently attempting to follow the example of the movant in *Torres v. DeMatteo Salvage Co., Inc.*, No. 2:14-cv-00774, 2016 WL 845326 (E.D.N.Y. Mar. 2, 2016), Plaintiff acknowledges

that Defendant will incur additional time and costs involved with rebutting a new damages expert, and offers to pay for expenses associated with the deposition of such new expert. (Pl.'s Mem., at 9-11). However, that does not address the expense that Defendant will incur for its own expert's rebuttal report, and also any expenses associated with obtaining further fact discovery in order to offer the rebuttal.

Monetary prejudice aside, in *Gem Financial Services v. City of New York*, No. 13CV1686MKBRER, 2019 WL 8014411 (E.D.N.Y. Apr. 18, 2019), as here, a plaintiff sought to reopen discovery for the purpose of presenting a substitute expert witness on the calculation of its purported damages. *Id.* at *2. Expressly distinguishing *Torres* and denying the motion, this Court noted that "prejudicial effects are not easily ameliorated where reopening discovery would alter the 'parameters of the dispute,' requiring the non-movant 'to accommodate potentially significant shifts in the theories being offered against it.'" *Id.* at *3 (quoting *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 962 (2d Cir. 1997)). This Court reasoned that "to allow appointment of [plaintiff's new expert] Mr. Schacter as a substitute witness would force Defendants to confront a new economic damage model, and the new records fed into it" and "would demand that Defendants freshly attack a core issue of fact." *Gem Fin. Serv.*, 2019 WL 8014411, at *3 (internal citations omitted). Thus, this factor was found to weigh in favor of denying the motion to reopen discovery, which the Court ultimately denied.

Likewise, here, Plaintiff's counsel seeks permission to find an additional expert that will opine on a new economic damage model based on 'diminution of business value' that is distinguishable from any theories Plaintiff has explored up to now.[1] While it is not clear precisely

---

[1] And one which presumably does not overlap with the opinions and testimony of their existing damages expert Mr. Mauriello. Plaintiff's prior theories of damages include (i) the alleged MSRP value of the inventory, (ii) lost profits, and (iii) projecting future gross revenues.

4

what model Plaintiff is proposing, the record evidence does not suggest such a model is possible, as discussed further *infra*. Thus, it would seem that any such opinion would have to be based upon documents and information that are *not* in the record, such that Defendant may require further *fact* discovery to rebut Plaintiff's new contentions.

The harm here is also analogous to the disfavored practice of "anchoring" in which counsel requests that jurors award unreasonably high damages awards, a practice which has been recognized as tending to inflate awards independent of the merits. *See Bermudez v. City of New York*, No. 15CV3240KAMRLM, 2019 WL 136633, at *10 (E.D.N.Y. Jan. 8, 2019) ("Although the Second Circuit has not prohibited parties from suggesting particular damages amounts to the jury, it has cautioned against this practice. . . . Here, plaintiff has not offered any specific or persuasive reason for the court to depart from the cautionary practice in this Circuit and the court shall not. The court therefore grants defendants' motion and precludes plaintiff's counsel from suggesting a specific damages amount in his opening statement, summation, or through witness testimony, to avoid anchoring the jury's perspective with respect to damages as evidence is presented during trial.") (citing *Ramirez v. N.Y.C. Off-Track Betting Corp.*, 112 F.3d 38, 40 (2d Cir. 1997); *Mileski v. Long Island R. R. Co.*, 499 F.2d 1169, 1172-74 (2d Cir. 1974); *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vacated on other grounds*, 518 U.S. 1031 (1996)); *see also Thomas v. Medco*, No. 95-CV-8401, 1998 WL 542321, at *15 (S.D.N.Y. Aug. 26, 1998) ("The practice of requesting a specific dollar amount in damages is disfavored by the Second Circuit because it risks unfairly swaying the jury by 'anchor[ing] the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence.'" (quoting *Consorti*, 72 F.3d at 1016)). It is even more problematic here, given that in the instant case the

5

'anchoring' attempt is being made against economic damages that are not subjective in nature, but require objectively provable bases—that which is lacking here.

The cases cited by Plaintiff on pages 10-11 of its Memorandum fail to support its argument that Defendant will not be prejudiced and are all distinguishable:

- *Associated Elec. Gas Ins. Servs. v. Babcock & Wilcox Power Generation Grp., Inc.*, No. 11-CV-715, 2013 WL 5771166, at *6 (D. Conn. Oct. 24, 2013) (rebuttal expert reports offered pre-summary judgment, and before the close of discovery with several expert depositions still pending);

- *Lab Crafters, Inc. v. Flow Safe, Inc.*, No. 03-CV-4025, 2007 WL 7034303, at *6, 8 (E.D.N.Y. Oct. 26, 2007) (rebuttal expert testimony offered within two weeks of the adversary's report, and where no further depositions or discovery was needed);

- *Liberty Mut. Fire Ins. Co. v. Omega Flex, Inc.*, No. 13-CV-203, 2013 WL 6047203, at *3 (D. Conn. Nov. 14, 2013) (plaintiff served expert reports a few weeks after the reports deadline, but while discovery was still open and prior to dispositive motion practice);

- *Mahoney v. Keyspan Corp.*, No. 04-CV-0554, 2007 WL 1651853, at *2 (E.D.N.Y. June 6, 2007) (accepting late report of *defendant's* expert on damages — it should be noted that defense expert reports are inherently rebuttals in nature);

- *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, No. 01-CV-11295, 2003 WL 22471909, at *2 (S.D.N.Y. Oct. 31, 2003) (permitting report and affidavit in rebuttal to opponent's expert report which was also belatedly served after deadline);

6

- *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94-CV-5587, 2002 WL 31780188, at *3 (S.D.N.Y. Dec. 11, 2002) (defendant's existing and previously disclosed expert permitted to offer an additional report rebutting plaintiff's expert);

- *Torres v. DeMatteo Salvage Co., Inc.*, No. 2:14-cv-00774, 2016 WL 845326, at *2-3, 6 (E.D.N.Y. Mar. 2, 2016) (permitting defendants to rely on previously undisclosed expert's report, where the importance of the evidence, which was central to liability issues, favored, on balance, reopening discovery);

- *Giordano v. PGT Indus., Inc.*, No. 04-CV-9246, 2007 WL 4233002, at *4 n.2 (S.D.N.Y. Nov. 30, 2007) (accepting plaintiff's liability expert report disclosed for the first time in opposition to summary judgment motion, and finding the late disclosure harmless where, among other things, the court would have denied the motion even if the expert's testimony was inadmissible);

- *Valentin v. County of Suffolk*, 342 F. App'x 661, 662-63 (2d Cir. 2009) (on appeal following jury trial, finding that district court was within its discretion to sanction defendant for late disclosure of expert by requiring that the expert be deposed; plaintiff chose not to depose the opposing expert and failed to object to the admission of the expert's testimony at trial); and

- *Krawec v. Kiewit Constructors Inc.*, No. 11-CV-0123 (LAP), 2013 WL 1104414, at *7 (S.D.N.Y. Mar. 1, 2013) (plaintiff failed to strictly comply with Rule 26 disclosure requirements, but did identify his expert as a potential witness nearly a year before the close of fact discovery, and the testimony was central to questions of liability).

7

With certain exceptions, these cases generally involve attempts to belatedly submit *rebuttal* expert reports that respond to an opposing expert. There is no claim here that Plaintiff's new expert would be offering a rebuttal report, nor can there be. Rather, Plaintiff is attempting to disclose a new damages expert that can and should have been disclosed as part of Plaintiff's affirmative case in the first instance.

Plaintiff's cases also represent situations where prejudice to the opponent was outweighed by countervailing factors, such as the importance of the testimony to core issues of liability. Here, however, not only is the area of discovery that Plaintiff wishes to reopen unrelated to liability, but there is no merit to the contentions that Plaintiff wishes for a potential expert to opine on given the record, as discussed in further detail below.

Furthermore, to address an important 'elephant in the room', the additional time afforded to the parties by the present COVID-19 pandemic is not a mitigating factor to the prejudice to Defendant. This is a time to be sheltering in place from a fearsome plague. It would be extremely prejudicial to Defendant if it were forced to proceed with additional expert and/or fact discovery and depositions in the present climate for obvious reasons. Even with the help of remote technologies, taking depositions right now would be far from ideal given well-publicized security flaws with the technology, disruptions of home life, and Internet connectivity and bandwidth issues given the volume of people simultaneously trying to work and conference from home.[2]

### 4. & 5.    Plaintiff Was Not Diligent and Has No Foreseeability Excuse

Diligence is the critical factor for determining whether there is "good cause" to reopen discovery. *See Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003) ("a finding of good

---

[2] On April 1, 2020, prior to the filing of Plaintiff's motion, we had cautioned Plaintiff's counsel not to exploit the pandemic to press a perceived opportunity for a strategic advantage. *See* (Ex. B, 4/1/20 emails between counsel).

8

cause depends on the diligence of the moving party"). This Court also treats the diligence and foreseeability prongs as intertwined. *See, e.g.*, *Gem Financial Service*, 2019 WL 8014411, at *4; *Moroughan v. County of Suffolk*, 320 F. Supp. 3d 511, 516-17 (E.D.N.Y. 2018). Here, Plaintiff was not diligent about pursuing the newly desired theory of diminution in the business's value, and there can be no excuse based upon foreseeability or lack thereof.

Plaintiff disingenuously suggests that it only became aware upon responding to Defendant's most recent December 2019 Rule 11 notice that a claim for "lost profits" was no longer appropriate, (Pl.'s Mem., at 11-12), and that "by the time of the Rule 11 Letter it had become clear that Plaintiff could not continue operations, and that its business had been lost, thus making the claim for loss of business value the more appropriate measure of damages." (Pl.'s Mem., at 12). This is incorrect on multiple levels.

First, Defendant had put Plaintiff on notice of the applicable law as early as August 9, 2017, the time of its first Rule 11 notice to Plaintiff, that lost profits were not a proper measure of damages. (Ex. C, Def.'s first Rule 11 letter dated 8/9/17).

Second, it did not take until December 2019 for Plaintiff to realize that it was incorrect in its initial damages calculation. As early as August 29, 2017, Plaintiff's counsel conceded that the MSRP value of the alleged goods was not a proper measure of damages. (Ex. D, Pl.'s 8/29/17 letter). It should also have been clear by December 13, 2017, upon the deposition of Plaintiff's existing damages expert Mr. Mauriello, that Plaintiff did not have their expert's support on a lost profits theory. At his deposition, Mr. Mauriello testified that a company's bottom-line profit or loss must be calculated net of expenses. (Ex. E, Mauriello Tr. 71:24-72:18). Mr. Mauriello admitted that the projections contained in his report are *not* net of costs or expenses, but are gross figures. (Ex. E, Mauriello Tr. 257:21-258:8). Mr. Mauriello admitted that although Plaintiff's gross

9

sales figures appeared to grow during the period of time he examined, so, too, did Plaintiff's cost of sales and other deductions; and that just as gross sales figures could be projected, so, too, could one project Plaintiff's costs and expenses. (Ex. E, Mauriello Tr. 258:9-25). Mr. Mauriello admitted that, when costs and expenses are considered, Plaintiff lost tens of thousands of dollars between 2012 and 2015. (Ex. E, Mauriello Tr. 259:2-11). Mr. Mauriello admitted that the projection that he performed for Plaintiff is unlike other forward-looking projections that he performs, in that the projection he performed for Plaintiff was based on gross, and not net, figures. (Ex. E, Mauriello Tr. 264:12-266:8). Mr. Mauriello further admitted that there was no way to know how much costs and expenses Plaintiff would have incurred in connection with the effort of selling the jewelry stock that Plaintiff claims was destroyed in the fire. (Ex. E, Mauriello Tr. 269:22-271:12).

Regardless of Mr. Mauriello's devastating testimony, Plaintiff has never withdrawn Mr. Mauriello as an expert and seemingly remains satisfied with his report. *See* (Ex. E, Mauriello Tr. 223:14-224:16, 229:23-230:8). Indeed, Plaintiff has been content to proceed for many years with Mr. Mauriello being their only damages expert until now. Although Plaintiff's conduct with respect to Mr. Mauriello does not make sense from the perspective of a diligent litigant, it is consistent with an overarching strategy that prioritizes 'anchoring' Plaintiff's claim in the millions of dollars regardless of the merits, as discussed *supra*.[3]

Third, Plaintiff's contention that the cessation of Zsa Zsa's business was the catalyst for seeking a different "more appropriate" theory of damages is belied by its principal's sworn testimony. Plaintiff knew that its operations had ceased by June of 2016. Meena Catalano testified at her June 22, 2017 deposition that Zsa Zsa Jewels, Inc. stopped doing business in 2016, and

---

[3] Plaintiff further benefitted in that Mr. Mauriello provided his report for free. (Ex. E, Mauriello Tr. 230:9-17).

participated in its final trade show in June of 2016. (Ex. F, Meena Catalano Tr. 18:3-23). Thus, if it is true that cessation of business was the catalyst for needing a different theory, then Plaintiff would have pursued a different theory of damages from as early as June of 2016. But it did not.

Fourth, concurrent to the filing of the instant motion, Plaintiff filed a Second Amended Complaint which omits any particular damages number and has omitted language referring to MSRP or lost profits as the basis for damages. (ECF Doc. No. 115). Notably, however, a redline document exchanged by Plaintiff's counsel comparing the Second Amended Complaint to the first Amended Complaint shows that Plaintiff has not added any new language to the pleading as part of their efforts to advance any new theory of damages. (Ex. G, Plaintiff's redline of 2nd Am. Complaint). Thus, Plaintiff seems to take the position that the existing language in the pleading is sufficient to encompass any new damages theory. This makes Plaintiff's failure to develop such other theories before the close of discovery all the more inexcusable.

Fifth, although Plaintiff alludes to unspecified "material events" that have created a need for further discovery, (Pl.'s Mem., at 12), this argument is completely without merit. Plaintiff cites no "material event" that requires the parties to have an opportunity for further discovery, and cannot, because there are none. Perhaps the only material change since the time of Defendant's August 9, 2017 first Rule 11 letter is that, on April 2, 2020 (after Plaintiff's instant motion was filed), the Court ruled, in accordance with the law, that it was objectively unreasonable for Plaintiff to maintain its lost profits claim. (ECF Doc. No. 119). Plaintiff now appears to believe that it should be rewarded for being on the wrong side of the law on the Rule 11 motion, by being given a fresh start on the issue of damages.

For these reasons, Plaintiff's claim that it is only in "hind sight" that they can see that their initially preferred theory of lost profits was not viable is demonstrably false.

Plaintiff's remaining excuse is that its failure to disclose an additional damages expert was not in bad faith. While we leave the determination of bad faith to the discretion of the Court, Defendant notes that Plaintiff has twice represented a totally different damages number to the federal government for its loss from the alleged jewelry—first in the 2013 joint tax filing of its principals Meena and Frank Catalano, (Ex. E, Mauriello Tr. 206:12-208:14), and then again, in the amended 2013 tax return filed on or about January 30, 2018, (Ex. H, Amended 2013 Tax Return, at 10). In those filings with the federal government, Plaintiff's principal has represented that the value of the jewelry inventory in the Vehicle was $497,500. In still other federal tax filings, Plaintiff had represented that its inventories of jewelry were far lower than $497,500. *See* (Ex. I, Ciccodicola Report, at p. 5).

In this litigation, however, Plaintiff demanded damages of $5.6 million—an order of magnitude greater—and stubbornly maintained such claim for years regardless of Defendant's repeated Rule 11 notices about how the facts and law do not support such a number. Defendant can only infer that Plaintiff was (and still is) trying to turn a vehicle fire with limited property damage into an opportunity to reap a windfall.

It should also be noted that Plaintiff dragged its feet and failed to conform its pleadings, but then withdrew the offending claims voluntarily after Defendant's *second* Rule 11 motion was *fully submitted* (and just before the Court's ruling), indicating that Plaintiff's position has been a strategic bluff all along. Now that Plaintiff has been called out on its bluff, it is seeking to find a way to retroactively justify its desired damages range.

## 6. Reopening Expert Discovery Will Not Lead to Relevant Evidence

Plaintiff now requests to disclose a new, additional expert to opine on its damages under a theory of diminution in value of business. But given the present record, such a theory appears to be a factual impossibility, and thus, Plaintiff's request is unlikely to lead to relevant evidence.

It is beyond dispute that Plaintiff consistently operated at a loss because its expenses far exceeded its revenue. According to both Plaintiff's tax preparer, Mr. Mauriello, and BMW NA's forensic accounting expert, Mr. Ciccodicola, Zsa Zsa operated with a loss in every year, except 2010, when it made $5, and 2016, when it made $10,000. (Ex. E, Mauriello Tr. 94:21-95:8, 117, 130, 143, 155, 162, 167); (Ex. I, Ciccodicola Report, at pp. 3-4); *see also* (Ex. F, Meena Catalano Tr. 197, 205, 215, 223, 227, 235, 240:2-9); (Ex. E, Mauriello Tr. 229:19-22, admitting that the "trajectory" of Zsa Zsa Jewels, Inc. prior to the November 2013 incident was that it was losing money). In every other year, Zsa Zsa reported losses of tens of thousands of dollars in its corporate tax returns, because its business expenses and costs consistently exceeded its revenues. (Ex. E, Mauriello Tr. 172:4-14, 269:21-271:2); (Ex. I, Ciccodicola Report, at pp. 3-4); *see also* (Ex. J, Frank Catalano Tr. 129:19-131:6); (Ex. F, Meena Catalano Tr. 198:2-203:18, 206:17-210:22, 217:14-221:12, 224:19-226:23, 229:16-232:3, 236:7-239:25, reviewing Plaintiff's considerable business expenses).

Furthermore, personal and business spending was intermingled on Zsa Zsa's lines of credit. *See* (Ex. J, Frank Catalano Tr. 63:6-82:13). These expenses contributed to the company's operating losses, but these same losses ultimately inured to its principals' personal benefit. The business's net negative numbers offset the principals' other income streams and allowed them to report lower income taxes (at times allowing them to avoid paying any personal income tax at all) while

13

increasing their tax refunds for multiple years. (Ex. E, Mauriello Tr. 196:24-198:22, 199:9-201:10, 201:20-204:16, 204:17-206:11, 215:7-215:18, 215:19-218:6, 218:9-220:13, 220:25-223:11).

These facts clearly do not support a theory that Plaintiff suffered millions of dollars of diminution in business value due to the accident. Of course, for Plaintiff's new expert to offer such an opinion, he/she would have to be relying upon substantially different facts than are in the record, which again raises the expectation that fact discovery would need to be reopened, multiplying the prejudice to Defendant.

As Plaintiff has not proffered an actual report or disclosed the identity of the prospective new expert, further analysis is not possible at this time. But even if it had, it is clear that under the foregoing circumstances, including the prejudice to Defendant, preclusion of such an expert would be proper under Fed. R. Civ. P. 37(c) as well.

Lastly, Plaintiff will not be unduly prejudiced if its motion to reopen expert discovery is denied. Plaintiff has available to it a theory of damages that it can pursue at trial—the replacement cost of the lost merchandise—which is the proper measure of damages in this action. *See* (4/2/20 Order, ECF Doc. No. 119, at pp. 2-3). That Plaintiff (or its counsel) may not be satisfied with how much damages are potentially available under this theory is a different issue.

## CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiff's motion to reopen expert discovery in its entirety.

Dated: New York, New York
       May 18, 2020

BIEDERMANN HOENIG SEMPREVIVO,
A Professional Corporation

By: _____*/s/ Joseph Kim*_____
                Joseph Kim

14

                                          One Grand Central Place
                                          60 East 42nd Street, Suite 660
                                          New York, New York 10165
                                          Tel: (646) 218-7560
                                          Joseph.Kim@lawbhs.com
                                          *Attorneys for Defendant*
                                          *BMW of North America, LLC*

To:    *All counsel of record via ECF*