**BIEDERMANN·HOENIG·SEMPREVIVO**
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

ONE GRAND CENTRAL PLACE
60 EAST 42ND STREET
NEW YORK, NY 10165
TEL 646·218·7560
FAX 646·218·7510
WWW.LAWBHS.COM

January 4, 2023

**VIA ECF**
Hon. Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Zsa Zsa Jewels, Inc. v. BMW of North America, LLC, et al.*
             Docket No:    1:15-cv-06519-KAM-RLM (E.D.N.Y.)
             Our File No:   525.17044

Dear Judge Matsumoto:

      As you know, we represent Defendant BMW of North America, LLC ("BMW NA" or "Defendant") in the above referenced matter. We submit this correspondence in brief reply to plaintiff's counsel's opposition to BMW NA's request for a hearing. (Dkt. 214).

      As indicated previously, and in stark contrast to the plaintiff's position, BMW NA maintains that the instant case presents a unique (or, at least, very rare) situation where the plaintiff executed and benefitted from improper tax avoidances on the very goods that are the subject of the verdict. (12/8/22 Ciccodicola Trial Tr., at 756:7-758:7, 760:5-763:25, 764:18-766:25) (dkt. Nos. 211; 213; 215). In short, none of the cases cited by plaintiff's counsel, (dkt. 214, at 2-5), address such a situation as this, where the plaintiff's own tax misconduct pertaining to the very *res* at issue, and arising out of the same incident, was the source of an improperly gained benefit, to which the plaintiff should not otherwise have been entitled.

      At the outset, it must be noted that *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 1995 WL 17050834, *57-58 (N.Y. 1995), cited by plaintiff's counsel on page 2 of their letter and characterized as an "expla[nation]" of the New York Court of Appeals, was actually a passage from an appellate brief of that plaintiff-respondent, and indeed not analogous to the instant action.

      We further note that the current circumstances are not at all analogous to *Randall v. Loftsgaarden* case the, cited by plaintiff's counsel on page 3 of their letter, since that action involved the application of antitrust and fraudulent transactions in which the petitioners were enticed to invest in a limited partnership to build and operate a motel. *Randall v. Loftsgaarden*, 478 U.S. 647 (1986). Where, as is the case here, Zsa Zsa Jewel's improper tax gains were a direct result of their own actions and decisions to claim losses from the same inventory that they have made the subject of this litigation. (Dkt. No. 211; 12/6/22 Meena Catalano Trial Tr., at 154:6-

155:3, 164:22-165:3, 168:2-12). Yet, there, the *Randall Court* found that 15 U.S.C.A. Section 12 Section 12 (2) Congress enabled the victims of prospectus fraud to shift the risk in an effort to further deter any sale of unsound, fraudulent and worthless securities through misrepresentation. *Id.* at 659. Nevertheless, and applying the same logic to the instant action, the Court can apply the requested tax set off to the verdict to limit the benefit of the windfall to plaintiff.

Notably, Plaintiff's counsel also cites *Resol. Tr. Corp. v. Fleischer*, 880 F. Supp. 1446, 1451 (D. Kan. 1995), on page 4 of their letter, but fails to mention that *Fleischer* was determined in accordance with Kansas law. Elsewhere in that decision, the *Fleicher* court cites New York cases and notes as follows:

> Under these circumstances, it is appropriate to offset the damages claimed as a result of the LFR transaction by the tax benefits received in order to arrive at an amount which most closely approximates the actual injury suffered. *See Macon-Bibb*, 530 F. Supp. at 1056 (purpose of compensatory damages is to compensate the plaintiff for injury actually sustained). If the defendants can show that the value of the LFR transaction to FSA was actually enhanced by income tax benefits which could immediately be realized, those benefits should not be ignored in calculating the damages FSA actually suffered from the conduct in issue. *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 676 F. Supp. 486, 488 (S.D.N.Y. 1987) (where a plaintiff is both injured and enriched by defendant's wrongful conduct "[it] cannot choose to recover for [its] injuries yet retain [its] windfall."); *Apex Oil Co. v. DiMauro*, 744 F. Supp. 53, 55-6 (S.D.N.Y. 1990) (same). Given that there is evidence that the LFR transaction was motivated by the directors' desire to shelter from tax liability certain income of FSA and specifically to realize certain tax benefits from the then existing losses of LFR, it is reasonable to offset the amount of injury plaintiff claims to have suffered by the anticipated and realized tax benefits of that investment. *See Burdett*, 957 F.2d at 1383 (court held it was unreasonable for plaintiff to claim as damages the anticipated and realized tax benefits of tax shelters and required that plaintiff's award be offset by the benefit realized).4 To ignore tax benefits that the plaintiff bargained for and received as a result of the investment could permit the plaintiff to obtain unreasonable damages. *See Macon–Bibb*, 530 F.Supp. at 1055 (where offsetting benefits rule may be applicable, it should be applied only if the failure to do so would permit the plaintiff to obtain unreasonable damages).

*Fleischer*, 880 F. Supp. at 1452-53.

Last, and though plaintiff notes that there is no need for a hearing on the issue of the consigned goods, as the testimony of Meena Catalano taken objectively appears to indicate a security type consignment under the *In re Ide Jewelry Co., Inc.* decision, this is entirely speculative and self-serving analysis. (dkt. No. 214 at p. 6) Indeed, there is no further support for this position in the record and the *In re Ide Jewelry Co., Inc.* decision provides a legal test for determining plaintiff's and defendant's rights with respect to consigned goods noting first that there are two types of consignments and a determination must be made as to which type of consignment is at issue. (ECF Doc. No. 211) In re Ide Jewelry Co., Inc. 75 B.R. 969 (1987). First, where the consignment is intended as security and the goods are delivered to the consignee primarily for

resale the reservation of title by the person making the delivery is limited in effect to a reservation of a security interest. Id.,See, N.Y. U.C.C. § 2–401(1) (McKinney 1964); See Id. §§ 1–201(37), 9–102(2) (McKinney Supp.1987); Mann v. Clark Oil & Refining Corp., 302 F.Supp. 1376, 1380, 6 U.C.C. Rep.Serv. (Callaghan) 1253, 1257–58 (E.D.Mo.1969), aff'd, 425 F.2d 736, 7 U.C.C. Rep.Serv. (Callaghan) 695 (8th Cir.1970); Nauman v. First National Bank of Allen Park, 50 Mich.App. 41, 212 N.W.2d 760, 761, 13 U.C.C. Rep.Serv. (Callaghan) 1191, 1193 (1973); See also, N.Y. U.C.C. § 2–106(1) (McKinney 1964), Cf. Columbia International Corp. v. Kempler, 175 N.W.2d at 468, 7 U.C.C. Rep.Serv. (Callaghan) at 654.

"Second, where consignments are not intended as security ("true consignments" or "price-fixing consignments"), they may, under certain circumstances and with respect to certain parties, be "deemed" to be sale or return transactions, even though the transaction is "not a sale with title passing to the buyer," Id.; citing, Manger v. Davis, 619 P.2d 687, 692, 30 U.C.C. Rep.Serv. (Callaghan) 515, 522 (Utah 1980). See N.Y. U.C.C. § 2–326(3) (McKinney 1964). In such an instance the goods are delivered to a consignee for sale and the consignee "maintains a place of business at which he deals in goods of the kind involved, under a name other than" that of the consignor, "then with respect to claims of creditors of" the consignee "the goods are deemed to be on sale or return," "unless the consignor has taken one of the three enumerated protecting steps." Columbia International Corp. v. Kempler, 175 N.W.2d at 469, 7 U.C.C. Rep.Serv. (Callaghan) at 657 (emphasis added); see, e.g., N.Y. U.C.C. § 2–326(3)(a)-(c) (McKinney 1964). However, no determination can be made as to what type of consignment plaintiff was involved in without a post-trial hearing since Zsa Zsa Jewels steadfastly maintained its ownership and control over the total merchandise within the vehicle at the time of loss until its sole owner, Meena Catalano, took the stand on December 6, 2022. (ECF Doc. Nos. 21; 213 and 215).

Wherefore, defendant maintains that a post-trial hearing would be beneficial in order for the Court to determine the proper reductions to and/or set offs of the verdict; or, in the alternative, that the judgment be vacated in its entirety for the reasons illustrated above, and in the prior post-trial filings cited above and incorporated herein by reference

Respectfully Submitted,

*Raychel A. Camilleri*

Raychel A. Camilleri

cc: All Counsel of Record (*via ECF*)