UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------
ZSA ZSA JEWELS, INC.,

       *Plaintiff*,     **MEMORANDUM & ORDER**
                15-cv-6519-KAM-RLM

  v.

BMW OF NORTH AMERICA, LLC,

       *Defendant*.
------------------------------
**KIYO A. MATSUMOTO, United States District Court Judge:**

    In December 2022, the Court presided over a jury trial in an action brought by Zsa Zsa Jewels, Inc. ("Plaintiff") against BMW of North America, LLC ("Defendant").  (ECF No. 219-1-4, Trial Transcript Days 1-4 ("Tr.").)[1]  The trial involved claims of strict products liability and negligence under New York common law regarding a BMW X3 automobile (the "Subject Vehicle"), leased by Plaintiff's owner, Meena Catalano, that unexpectedly caught fire on November 6, 2013, while being driven by Plaintiff's employee, Tiffany Sobers ("Ms. Sobers"), thereby destroying Plaintiff's jewelry inventory therein.  The jury returned a verdict in favor of Plaintiff, awarding $450,000 dollars including pre-judgment interest and post-judgment interest at the rate provided by 28

---

[1] Trial took place from December 6, 2022 to December 9, 2022.  Though the trial transcript is uploaded onto the electronic filing system as four different exhibits, the page numbers on the right top corner are continuous and the Court refers to the trial transcript as one document.

U.S.C. § 1961.[2]  On January 11, 2023, the Court entered judgment. (ECF NO. 223, Judgment.)

Presently before the Court is Defendant's renewed motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b) ("Rule 50(b)") and, in the alternative, motion for a New Trial and Amendment of Judgment pursuant to Fed. R. Civ. P. 59(a)(1)(A) ("Rule 59").  (ECF Nos. 218, Defendant's Motion for Judgment as a Matter of Law ("Def. JMOL Mot."); 220, Memorandum of Law in Support of Defendant's Motion for Judgment as a Matter of Law ("Def. JMOL Mem."); 221, Defendant's Motion for a New Trial ("Def. Rule 59 Mem."); 230, Defendant's Memorandum of Law in Reply for its JMOL ("Def. JMOL Reply"); 231, Defendant's Memorandum of Law in Reply for its Rule 59 Motion ("Def. Rule 59 Reply").  Plaintiff opposes Defendant's motions.  (ECF Nos. 225, Plaintiff's Memorandum of Law in Opposition to Defendant's JMOL Motion ("Pl. JMOL Opp'n Mem."); 226, Plaintiff's Memorandum of Law in Opposition to Defendant's Rule 59 Motion ("Pl. Rule 59 Opp'n Mem.").)  Defendant also moved

---

[2] After the verdict, the parties requested the Court delay entering judgment as they disputed how to calculate the final judgment amount and provided the Court with supplemental briefing.  (ECF Nos. 210-13.)  On January 10, 2023, the Court denied the parties' request for a hearing and directed Plaintiff's counsel to submit updated final figures reflecting the parties' calculation of pre-judgment interest as of January 10, 2023.  The parties conferred and agreed to pre-judgment interest in the amount of $372,045.21, but they did not agree on the proper collateral source reduction.  (*See* ECF Nos. 211, 213, 215, 216.)  After considering the parties' submissions, the Court entered judgment in the amount of $666,645.89 (jury's verdict of $450,000 plus prejudgment interest running from November 6, 2013 through January 10, 2023 of $372,045.21, for a total of $822,045.21, reduced by the collateral source amount of $155,399.32), using the formula set forth in *Bauman v. Keene*, 18 F.3d 126 (2d Cir. 1994).  (ECF No. 222, Pl. Letter on Pre-judgment Interest.)

pursuant to Fed. R. Civ. P. 60(b)(5) for relief from the judgment and subsequently incorporated its arguments into its Rule 59 motion.  Plaintiff also opposed Defendant's Rule 60(b)(5) motion. (ECF Nos. 210, 211, 212, 214.)  For the reasons set forth below, Defendant's Rule 50(b), 59, and 60(b)(5) motions are **DENIED**.

## BACKGROUND

I.  **Defendant's Pre-Trial Motions**

Before proceeding to trial, the case was assigned to the Honorable Judge I. Leo Glasser.  In 2018, Defendant moved pursuant to Fed. R. Evid. 702 to preclude the testimony of Plaintiff's proposed causation and defectiveness expert witness, Peter J. Leiss ("Mr. Leiss"), and pursuant to Fed. R. Civ. P. 56 for summary judgment.  (ECF No. 86, Def. Motion for Summ. J.)

On October 11, 2019, Judge Glasser granted Defendant's motion to preclude Mr. Leiss's testimony and granted in part and denied in part Defendant's motion for summary judgment.  (ECF No. 97, Oct. 11, 2019 Order at 42.)  Judge Glasser found that based on Mr. Leiss's professional experience, he was "competent to testify about tire pressure monitoring systems [TPMS] generally, but . . . not qualified to testify about TPMS systems with manual reset features in particular." (*Id.* at 25.)  Additionally, Judge Glasser found that Mr. Leiss was "not qualified to opine on questions concerning tire safety—including the air pressure at which it is likely that a tire could come apart or spark a fire."  (*Id.*)

Accordingly, Judge Glasser granted Defendant's motion to exclude Mr. Leiss's testimony.

With Mr. Leiss's testimony excluded, Judge Glasser allowed Plaintiff to proceed to trial on a theory of a "design/manufacturing defect claim asserted on the basis of circumstantial evidence." (*Id.* at 42.) In making his ruling, Judge Glasser relied on Section 3 of the Restatement (Third) of Torts: Products Liability (1998), also endorsed by New York Court of Appeals case law, which provides that:

> It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:
> (a) was of a kind that ordinarily occurs as a result of product defect; and
> (b) was not, in the particular case, solely the result of causes other than the product defect existing at the time of sale or distribution.

Restatement (Third) of Torts: Products Liability (1998)(hereinafter "Restatement") § 3.

On February 11, 2022, the case was reassigned to Judge Kiyo A. Matsumoto for trial. (Scheduling Order Feb. 11, 2022.) The jury was selected on December 5, 2022, and was tried between December 6 through 9, 2022. This Court applied Judge Glasser's meticulous, scholarly rulings to the trial, allowing Plaintiff to proceed to present a circumstantial case for design and

manufacturing defect under strict liability and negligence.  (Tr. at 844-45.)

On December 8, 2022, at the close of Plaintiff's case in chief, Defendant moved pursuant to Fed. R. Civ. P. 50(a) for judgment as a matter of law, on the following bases: (1) that Plaintiff failed to present adequate evidence to support a circumstantial case of manufacturing or design defect; (2) that Plaintiff failed to present adequate evidence to support a circumstantial case of negligence; and (3) that Plaintiff failed to present sufficient evidence to support an award of punitive damages.  (ECF No. 203 at 2-7.)  Later that day, after Defendant rested, Defendant renewed its motion for a directed verdict pursuant to Fed. R. Civ. P. 50(b), on the same three grounds.  (ECF No. 204 at 2-7.)  The Court denied Defendant's motions on the first two grounds and granted Defendant's Rule 50 motion on punitive damages.  (Tr. at 803-05.)

## II.  Joint Statement of the Case and Stipulations

In the parties' joint statement of the case, Defendant and Plaintiff stipulated to the jury:

> Ms. Sobers departed from New York, New York and was headed to a jewelry trade show in Marlborough, Massachusetts. Ms. Sobers, after experiencing some trouble with the vehicle, pulled over to the shoulder of the road while en route in the vicinity of Southbury, Connecticut.  Soon thereafter, Ms. Sobers was alerted by a third party that the vehicle was on fire. Ms. Sobers exited the vehicle and

left behind the Plaintiff's merchandise. The vehicle and its contents were heavily damaged in the fire. Plaintiff alleges that its merchandise was either lost or destroyed in the fire and is seeking the replacement cost of its merchandise.

It was determined that the fire began in the area of the rear right wheel, and the cause and origin of the fire was a loss of pressure in the right rear tire which allowed the tire to ignite. **A remaining issue for determination at trial is whether the TPMS did or did not illuminate and act to warn the driver, Ms. Sobers, that the right rear tire was low.  In addition, it remains at issue what the nature and value of the Plaintiff's merchandise was at the time of the incident.**

(ECF No. 186-2, Joint Statement of the Case at 2 (emphasis added).)

The parties also stipulated that the Subject Vehicle's Owner's Manual (which was admitted in evidence as Plaintiff's Ex. 4 and Defendants' Ex. B at trial and read into the record by the Court to the jury (Tr. at 67-69)) provides in relevant part at page 91:

As an added safety feature, your vehicle has been equipped with a tire pressure monitoring system (TPMS) that illuminates a low tire pressure telltale when one or more of your tires is significantly under-inflated. Accordingly, when the low tire pressure telltale illuminates, you should stop and check your tires as soon as possible, and inflate them to the proper pressure. Driving on a significantly under-inflated tire causes the tire to overheat and can lead to tire failure.  Under-inflation also reduces fuel efficiency and tire tread life, and may affect the vehicle's handling and stopping ability. Please note that the TPMS is not a substitute for proper tire maintenance, and it is the

> driver's responsibility to maintain correct
> tire pressure, even if under—inflation has not
> reached the level to trigger illumination of
> the TPMS low tire pressure telltale.

(ECF No. 202, Joint Stipulations of Fact at 5.)  The parties stipulated that this document was "[t]he BMW X3's Owner's Manual received by Meena Catalano" in connection with the Subject Vehicle. (*Id.* at 4.)

Accordingly, the Court notes that after Judge Glasser's ruling on Defendant's motion for summary judgment, all parties understood that at trial, Plaintiff would not present an expert witness on causation/defect.  The parties stipulated that the jury would decide "whether the TPMS did or did not illuminate and act to warn the driver, Ms. Sobers, that the right rear tire was low" and the value of Plaintiff's inventory in the Subject Vehicle at the time of the incident for calculating damages.  (ECF No. 186-2, Joint Statement of the Case at 2.)

## III. Evidence at Trial

Plaintiff's case in chief consisted of four witnesses: Meena Catalano and her husband, Frank Catalano, co-founders of Zsa Zsa (Tr. at 73-74, 211, 215-16); Tiffany Sobers, Plaintiff's employee and the driver of the Subject Vehicle on the night of the fire (*id.* at 250, 255); and Anthony Mauriello, an accountant, who assisted Plaintiff with bookkeeping and tax preparation.  (*Id.* at

501-504).  The Court will recount the evidence presented at trial relevant to the motions.

A. *Meena Catalano Testimony, Owner of Zsa Zsa Jewelry, Inc.*

After providing a background on the business of Zsa Zsa, Meena Catalano ("Ms. Catalano") testified that prior to the November 6, 2013 accident, she leased the Subject Vehicle and used the Subject Vehicle, *inter alia*, to transport Plaintiff's jewelry to trade shows.  (Tr. at 86-87.)  Ms. Catalano further testified that as a result of the permanent damage from the accident/fire "[t]here was nothing recovered in the car," which had contained approximately 90-95 percent of Plaintiff's jewelry inventory, as well as invoices, a computer, and calculators.  (*See id.* at 88-89, 103, 115.)

Regarding the subject Vehicle's TPMS system, Ms. Catalano testified that on or around October 2012, the "tire pressure monitor light" came on, at which point Ms. Catalano took the Subject Vehicle in to Open Road BMW for servicing.  (*Id.* at 96.)  According to Ms. Catalano an Open Road employee "took it briefly for maybe half hour, he took it inside and service and he say you should be good to go, not a problem."  (*Id.*)  Ms. Catalano testified that she told the mechanic, "this light is on so I'm concerned."  (*Id.* at 97.)  Ms. Catalano further testified that the Open Road employee told her the tire pressure monitor light "comes up all the time so no big deal" and was finished checking the car

within approximately 30 minutes.   (*Id.* at 97, 102.)   After her visit to Open Road, Ms. Catalano did not see the tire pressure monitor light come on again.  (*Id.* at 100-01.)   Ms. Catalano further clarified that when she took the Subject Vehicle to Open Road, there was no flat tire.  (*Id.* at 102.)

Ms. Catalano testified on cross-examination that she "didn't read the owner's manual" of the Subject Vehicle.  (*Id.* at 143.)   Ms. Catalano also testified that she had a "personal relationship" with Ms. Sobers and trusted both her and the Subject Vehicle.  (*Id.* at 143-45.)   On cross examination, Ms. Catalano also testified about how she had "outstanding bills from the manufacturers which are not being paid," as "some" of the jewelry lost in the fire was "given on consignment."  (*See id.* at 188.) When asked about whether she had paid for all of the merchandise that was in the Subject Vehicle fire, Ms. Catalano responded that she had not, and that "[p]retty much 80 to 90 percent was not paid" and that there was "minimal" insurance.  (*Id.* at 189.)   Defense counsel cross-examined Ms. Catalano about her insurance policies (*id.* at 189-93), and various items on the inventory of lost or damaged jewelry, but did not cross-examine her about the specific amounts or items of jewelry lost in the fire.  (*Id.* at 200-202).

    *B. Frank Catalano Testimony, Investor and Employee of Zsa Zsa Jewelry*

Frank Catalano testified to having an immediate involvement in Plaintiff's business when Meena Catalano opened Zsa Zsa "some years" after their marriage. (*Id.* at 215.) Mr. Catalano testified about Plaintiff's profit and loss report from 2012, which was prepared by their tax accountant, Mr. Mauriello. (*Id.* at 217.) Mr. Catalano also testified to loading the Subject Vehicle the night of the accident with "several cases of jewelry" each weighing approximately forty to sixty pounds of stones and diamonds. (*Id.* at 220–21.)

> C. *Tiffany Sobers, Driver of the Subject Vehicle and Employee of Zsa Zsa Jewelry, Inc.*

Ms. Sobers testified that before the November 2013 accident, she had driven the Subject Vehicle on "multiple occasions" for local road trips and trade shows, "anywhere within a four-hour distance." (*Id.* at 263.) Ms. Sobers also testified to familiarity driving to Malborough, Massachusetts for multiple trade shows in the past, including driving at night. (*Id.* at 273–75.) Ms. Sobers further testified to her love of driving, and that the year of the accident, Ms. Sobers often rented vehicles on her own and drove on long trips. (*Id.* at 276.) Ms. Sobers testified that she prefers driving either at the speed limit or up to five miles over the speed limit. (*Id.* at 292.)

Ms. Sobers testified that, aside from the night of the accident, she never found the Subject Vehicle "difficult to

operate" or "confusing in any way." (*Id.* at 263-64.)  Ms. Sobers further testified that she was aware of the Subject Vehicle's TPMS system.  (*Id.* at 264-65.)  She recalled one occasion during which Ms. Catalano showed her the TPMS system that had a warning light on it, stating words to the effect of "tire calibration or tires need to be calibrated." (*Id.* at 266.)

When Ms. Sobers left for Malborough, Massachusetts on the night of the accident, she testified that she did not see "any warning indicators of any kind displayed in the car." (*Id.* at 284.)  During the drive, she pulled off to get gas "somewhere in upstate New York" and testified that did not "notice anything unusual about the tire at the time" and did not "notice any warning lights on the dashboard of the vehicle." (*Id.* at. 285-88.)  Some period of time after refueling the Subject Vehicle, Ms. Sobers testified that the steering wheel suddenly "pretty much seized for a moment, then got really loose and turned all the way to kind of the right—the right—started turning left and right, more veered right.  So I ended up from the far left lane all the way to the far right lane of the highway." (*Id.* at 291.)  She testified to being "startled" and "recollect[ing]" herself before calling the Subject Vehicle's SOS button. (*Id.*)

After Ms. Sobers pulled off to the side of the road, and looked at the dashboard, she noticed that there was a light that read, "coolant level low." (*Id* at 293-94.)  She testified that

she did not see any warning lights "when the wheel itself seized and got loose," and only remembers seeing the words "coolant level low" when she pulled over. (*Id.* at 294.) After speaking with the SOS operator, she got out of the car and proceeded to conduct a "visual inspection" of the car, including "look[ing] at every single tire." (*Id.* at 296.) She testified that during the call with SOS, she was asked and reported what she noticed about the Subject Vehicle and "reported that the only thing I had visibly seen on the dashboard [was] that the coolant level [was] low." (*Id.* at 297.) Ms. Sobers did not testify as to whether any of the tires were deflated.

Ms. Sobers then testified that, after she was back inside the Subject Vehicle, an 18-wheeler semi-truck suddenly pulled to the side of the road in front of her, which she found "really strange and really odd." (*Id.*) The driver then exited the truck, came over to Ms. Sobers in the Subject Vehicle, pulled the door open and "essentially saved [Ms. Sobers'] life that night" because when Ms. Sobers looked to the right-hand side of the Subject Vehicle, she noticed it was on fire. (*Id.*) Ms. Sobers then testified to being in "complete shock" and that "seconds later the car exploded." (*Id.* at 297-98.) She was visibly emotional on the stand and testified to the jury that the experience was "really traumatic to think about." (*Id.* at 297.)

Ms. Sobers also testified that when questioned by the police about the accident, an officer asked her "to place a dollar value on the jewelry that had been destroyed in the fire," to which Ms. Sobers responded, $450,000, based on her personal involvement in packing the inventory. (*Id.* at 344.)  On cross examination, Ms. Sobers testified that Ms. Catalano informed Ms. Sobers to be on the lookout for a light indicating any potential problems with the TPMS. (*Id.* at 432-33.)  Ms. Sobers further testified that she understood that if there was a problem with the TPMS, a light on the dashboard of the Subject Vehicle would come on, indicating such a problem. (*Id.* at 434-35.)

Ms. Sobers also testified that anywhere from "90 to 95 percent" of Plaintiff's inventory was in the Subject Vehicle on the night of the accident.  The company's laptop, inventory sheets, and invoices, and Ms. Sobers's luggage were also in the Subject Vehicle and lost in the fire. (*Id.* at 281.)  She provided extensive testimony regarding the process by which she and the Catalanos determined what was in the car and what was left of the office inventory in the days after the fire. (*Id.* at 357-59.)  She testified that it took hours to reconstruct the inventory without the company laptop and that she and the Catalanos "used various emails, paper receipts that were left behind, purchase orders and invoices for previous clients" to prepare Plaintiff's Exhibit 7, Plaintiff's 13-page inventory of lost products with costs. (*Id.*

13

at 357, 361.)  She was asked by Plaintiff's counsel to explain the
"cost and total cost columns" on the inventory.  Ms. Sobers
explained that the "costs" columns reflected the costs to purchase
the item from the vendor, exclusive of shipping, overhead, and
other expenses, and the "total costs" included the cost multiplied
by the quantity of the item.[3] (*Id.* at 358-60.)  Ms. Sobers further
described her understanding and close involvement with Plaintiff's
business.  (*Id.* 357-73.)

     *D. Anthony Mauriello, Zsa Zsa Jewelry Inc. Tax Accountant*

     Plaintiff's final witness was Anthony Mauriello, a tax
accountant with over twenty years of experience.  (Tr. at 501.)
Mr. Mauriello provided Plaintiff with bookkeeping and tax
preparation services and was called by Plaintiff to establish the
costs of Plaintiff's inventory for purposes of damages.  (*Id.* at
504-05.)  In Exhibit 14, Mr. Mauriello explained that "purchases
dash resale items" in the amount of $591,370.31 reflected the
amount of items that Plaintiff purchased and intended to resell in
2012.  (*Id.* at 513-14.)  Plaintiff's profit and loss statements
for the calendar years 2010 to 2016 and its tax returns from 2010
to 2016 were also submitted into evidence for the jury to consider.

---

[3] "So the cost column is . . . the basic cost of purchasing it from the vendor.
So that's the just raw cost of the item. That doesn't include any additional
costs like shipping or overhead, [selling, general and administration], fringe,
none of that. That's just the cost of that specific item . . . Total cost is
the multiplied cost column by the quantity column of that item." (Tr. at 359-
60.)

(Plaintiff's Exhibits 12-18, 31A-31G.)   Mr. Mauriello also
explained Plaintiff's 2012 tax return. (*Id.* at 520-26; *see also*
Plaintiff's Exhibit 31.)

On cross-examination, Mr. Mauriello testified that
Plaintiff's tax returns did not include any items on consignment
in the amount of items purchased for resale. (Tr. at 527-28.) He
did not "recall" whether it "was ever brought to [his] attention
that [Plaintiff] had $450,000 worth of inventory," and that if
Plaintiff had $450,000 in inventory, it would have been subtracted
from the cost of goods sold, and would have altered Plaintiff's
tax returns for 2012.   The cost of goods sold for 2012 on the
profit and loss statements and tax returns was $1,063,591.15. (*Id.*
at 519, 530-32; Plaintiff's Exhibits 14, 31C.)

*E. Defendant Witnesses*

On December 8, 2022, after Plaintiff rested, Defendant
moved for a directed verdict, arguing that there was insufficient
evidence for the jury to find that the Subject Vehicle had a
defective TPMS, based on Ms. Sobers's testimony that the TPMS
warning light did not illuminate before the vehicle fire.
Defendant argued that there was insufficient evidence for the jury
to find for Plaintiff as to both the defective manufacturing and
design strict liability claim and negligence claim. (Tr. at 587-
593.)   Defendant also argued that "the only role that BMW North
America had was distributing the vehicle." (*Id.* at 591.) Defense

counsel argued that "there's absolutely not one scintilla of evidence that would suggest that they could meet their burden." (*Id.* at 593.)   The Court then heard argument from Plaintiff's counsel, who discussed the negligence and design and manufacturing defect evidence in the context of a circumstantial case, as permitted by Judge Glasser's ruling, including punitive damages. (*Id.* at 593-607.)   The Court reserved ruling on Defendant's Rule 50(a) motion and Defendant presented its case.   (*Id.* at 606-07.)

Defendant's witnesses consisted of Deborah Villepigue, an Independent Certified Gemologist Appraiser, who was certified by the Court as an expert witness in "forensic appraisals and gemology," (*id.* at 615), and Anthony Ciccodicola, a certified public accountant, who was certified by the Court as an expert witness in "forensic accounting." (*Id.* at 751.) Defendant hired Ms. Villepigue to conduct an inspection of Plaintiff's jewelry, (*id.* at 618–23), and present expert testimony to the jury that Plaintiff's damaged or lost jewels were not worth much as Plaintiff was claiming. (*Id.* at 618-60.) Mr. Ciccodicola was retained by Defendant to inspect the accounting practices of Plaintiff and provided testimony about those practices and the value of lost inventory. (*Id.* at 752-92.)

Additionally, Defendant read a portion of the deposition transcript of Mark Boehler into the record. Mr. Boehler was an employee and Master Technician of BMW Open Road of Edison. (*Id.*

at 707-08.)  Mr. Boehler's deposition testimony provided the jurors with information about how the TPMS was supposed to work, and how the recalibration of underinflated tires would proceed.  (*Id.* 707-17.)  On cross examination, he also testified that "If the tire pressure warning system is not operating properly, it could lead to the customer not knowing that their tires were underinflated." (*Id.* at 728-29.)  Mr. Boehler also testified that if a customer does not know that a tire is underinflated, and the customer continues to drive the vehicle, friction develops and a fire is possible.  (*Id.*)

After the testimony of Defendant's witnesses concluded, Defendant renewed its Motion for Judgment of a Matter of Law pursuant to Fed. R. Civ. P. 50(b).  (*Id.*)[4]  The Court denied the motions, on the first two grounds and granted Defendant's Rule 50 motion on punitive damages.  (*Id.* at 804-07.)  The Court excused the jury and conducted a charging conference during which the parties were provided with proposed charges and a verdict sheet, and an opportunity to correct, object, or modify.  (*Id.* at 807-70; ECF Nos. 205, 205-1 (also marked as Court Ex. 1 and Ex. 1-A).) Based on the conference, the Court revised the jury instructions

---

[4] As discussed *supra*, Defendant renewed its Rule 50(b) motion on the same three grounds as its 50(a) motion:  the evidence was insufficient (1) to support a verdict for strict liability for manufacturing or design defect; (2) to support a verdict for negligence; and (3) to establish that Plaintiff was entitled to seek punitive damages.  (ECF No. 204 at 2-8.)  The Court granted Defendant's Rule 50(b) motion on punitive damages.

and provided copies to the parties and advised the parties to review the charges to ensure that nothing was omitted. (*Id.* at 871; ECF No. 206, 206-1 (Court Ex. 2, 2-A).)[5]  After closing arguments, the Court charged the jury, and the jury commenced deliberations. (*Id.* at 933-68.)  The jury returned a verdict for $450,000 for Plaintiff, and the Court entered judgment for Plaintiff and against Defendant on January 11, 2023, in the amount of $666,645.89. (*Id.* at 970-73; ECF No. 223, Judgment.)

On January 6, 2023, Defendant renewed its motion for Judgment as a Matter of Law pursuant to Fed. R. of Civ. P. 50(b) (Docket. No. 218, "Motion for Judgment as a Matter of Law (Renewed)) and simultaneously moved pursuant to Rule 59(a)(1)(A) for a New Trial and Amendment of Judgment (Docket No. 221, "Motion for New Trial and Amendment of Judgment".)  Defendant's Rule 59 motion also incorporated its separate motion to amend the judgment, pursuant to Rule 60(b)(5), for a hearing regarding the set-off of the purported "tax benefits improperly received by the Plaintiff." (ECF No. 221-1 at 14 n.1 (citing ECF Nos. 211, 213, 215, 216).)

## IV. Defendant's Rule 50(b) Motion

### a. Rule 50(b) Legal Standard

Rule 50(a) of the Federal Rules of Civil Procedure permits a party to move for judgment as a matter of law after a

---

[5] "The COURT: Take a look anyway. Counsel, take a quick look when we post these tonight, make sure we have not missed anything."  (Tr. at 871.)

party has been fully heard and before a case is submitted to the jury. Fed. R. Civ. P. 50(a). A motion made pursuant to Rule 50(a) "must specify the judgment sought and the law and facts that entitle the movant to the judgment." *Id.* If the court denies a party's Rule 50(a) motion, the movant may file a renewed motion for judgment as a matter of law no later than 28 days after entry of judgment.[6] Fed. R. Civ. P. 50(b). "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

"In considering a motion for judgment as a matter of law, the district court 'must draw all reasonable inferences in favor of the nonmoving party.'" *Zellner v. Summerlin*, 494 F.3d 344, 370 (2d Cir. 2007) (quoting *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150 (2000)). The court must not, however, make credibility determinations or weigh the evidence because "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Id.* (quoting *Reeves*, 530 U.S. at 150). Consequently, "'although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Id.*; *see*

---

[6] The parties do not dispute that Defendant's Rule 50(a), 50(b), and 59 motions are timely.

*also Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970 (2d Cir. 1987) (a court "cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury") (internal quotation marks omitted).

The movant thus bears a heavy burden, because "a court may grant a motion for judgment as a matter of law 'only if it can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been *compelled* to accept the view of the moving party.'" *Zellner*, 494 F.3d at 370-71 (quoting *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir. 1993)) (emphasis in original). In other words, the court may grant a Rule 50(b) motion for judgment as a matter of law only if the record contains "'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded [jurors] could not arrive at a verdict against [it].'" *Concerned Area Residents for Env't v. Southview Farm*, 34 F.3d 114, 117 (2d Cir. 1994) (quoting *Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992)).

"Because a motion pursuant to Rule 50(b) is in reality a renewal of a motion pursuant to Rule 50(a), the grounds on which

a party may rely in a Rule 50(b) motion are limited to those
grounds that were specifically raised in the prior [Rule 50(a)
motion]." *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
490 F. Supp. 3d 593, 615–16 (E.D.N.Y. 2020) (*citing Lambert v.
Genesee Hosp.*, 10 F.3d 46, 53–54 (2d Cir. 1994) and *Galdieri-
Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir.
1998)) (internal citations and quotation marks omitted).  Thus, it
is well established that "the movant is not permitted to add new
grounds after trial." *Galdieri-Ambrosini*, 136 F.3d at 286 (*citing
McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997)).

The Court reviews Defendant's Rule 50(b) motion in
light of these considerations.

### b. Application

In the renewed 50(b) motion, Defendant advances six
separate arguments (although only two of the arguments, identified
below as (3) and (4), regarding sufficiency of the evidence were
raised in Defendant's Rule 50(a) motion before the jury
deliberated): (1) that the Court erred in letting the case proceed
to trial based on circumstantial evidence (ECF No. 220 at 4–6);
(2) that the law of the case doctrine does not bar this Court from
directing verdict for Defendant now (*id.* at 6–7); (3) that
Plaintiff presented insufficient circumstantial evidence of a
manufacturing or design defect to support the jury's verdict (*id.*
at 7–14); (4) that Plaintiff presented insufficient evidence of

negligence to support the jury's verdict (*id.* at 15); (5) that Plaintiff presented insufficient evidence of causation to support the jury's verdict (*id.* at 15–17); and (6) that Plaintiff presented insufficient evidence that Defendant was responsible for distributing the Subject Vehicle to hold Defendant strictly liable (*id.* at 17–18).

### a) Precluded Arguments

The Court finds that Defendant did not previously raise the following arguments in its Rule 50(a) and Rule 50(b) motions and is thus precluded from arguing that: (1) in reference to Judge Glasser's prior Memorandum and Order, that the law of the case doctrine does not bar the Court from directing a verdict for Defendant; (2) that there was insufficient evidence to establish that Defendant was responsible for distributing the Subject Vehicle; and (3) that there was insufficient evidence of causation. Although Defendant raises these three bases in its current Rule 50(b) motion, it failed to raise them at trial in its Rule 50(a) and 50(b) motions before the jury commenced deliberations. *Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012) (A Rule 50(b) motion "is only a renewal of the pre verdict motion," and "can be granted *only on grounds advanced in the pre verdict motion*.") (emphasis in original); *see also Barkley v. United Homes*, LLC, No. 04-CV-875 (KAM) (RLM), 2012 WL 2357295, at *4 (E.D.N.Y. June 20, 2012) ("A renewed motion for judgment as a matter of law pursuant

to Rule 50(b) must follow an earlier motion on the same subject[.]"), *aff'd sub nom. Barkley v. Olympia Mortg. Co.*, 557 F. App'x 22 (2d Cir. 2014), as amended (Jan. 30, 2014) (summary order). Because "the movant is not permitted to add new grounds after trial," *see Galdieri-Ambrosini*, 136 F.3d at 286, these three new arguments will not be considered for the first time in Defendant's renewed Rule 50(b) motion because a forfeited issue may only be reached if "to ignore it would result in manifest injustice" or if it is a "purely legal error." *AIG Glob. Secs. Lending Corp. v. Banc of Am. Secs., LLC*, 386 F. App'x 5, 6 (2d Cir. 2010) (summary order) (citing and quoting *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 119 (2d Cir. 2004)). Defendant's motion does not show that "manifest injustice" or "purely legal error" warrants judgment as a matter of law. Defendant also fails to raise the three arguments noted above in its Rule 59(a)(1)(A) motion.

Moreover, the Court also finds that Defendant's Rule 50(b) argument, that the "[t]he Court should not have permitted plaintiff to proceed to trial on the basis of circumstantial evidence under the Third Restatement, or under New York law applying it," (ECF No. 220 at 5)[7], is distinct from the argument advanced in Defendant's 50(a) motion and renewed in its Rule 50(b)

---

[7] Defendant also raises this argument in its Rule 59(a)(1)(A) motion. (ECF No. 221-1 at 4-8.)

motion: that Plaintiff had presented "insufficient circumstantial evidence upon which the jury could find that [the Subject Vehicle] had a manufacturing or design defect at the time it left [Defendant's] hands." (ECF No. 203 at 2.) Here, Defendant has advanced two separate arguments, one of which was preserved at trial and addresses the sufficiency of the circumstantial evidence at trial, and the other of which requests that the Court grant a new trial based on the decision to allow Plaintiff to prove its case with circumstantial evidence. Accordingly, the Court will consider Defendant's argument that the Court "should not have permitted Plaintiff to proceed [to trial] based on circumstantial evidence" in the context of Defendant's Rule 59(a)(1)(A) below. (ECF. No. 221-1 at 4.)

The foregoing leaves only two of Defendant's arguments to be addressed under the standards applicable to Rule 50 motions: (1) that Plaintiff presented insufficient circumstantial evidence of a manufacturing or design defect under strict liability to support the jury's verdict on Count III, (ECF No. 220 at 7–14), and (2) that Plaintiff presented insufficient evidence of a defect under negligence standards to support the jury's verdict on Count IV (*id.* at 15). Because "there is no practical distinction under New York law between product liability actions premised on

negligence and those premised on strict liability,"[8] the Court will concurrently consider whether the circumstantial evidence at trial was sufficient for both Count III and IV on strict liability and negligent theories.   (ECF No. 97 at 13 n.10.)   For the reasons below, the Court concludes that the evidence was sufficient to sustain the jury's verdict on Counts III and IV.

### b) Sufficiency of Circumstantial Evidence at Trial

The Court finds that Plaintiff's evidence, including Ms. Sobers's testimony, was apparently credited by the jurors, and was sufficient for the jurors to find that the Subject Vehicle's TPMS failed to emit a low tire pressure warning at any point prior to the fire, which, as all parties stipulated, was caused by an underinflated run flat tire.   Ms. Sobers was the only witness with personal knowledge who testified that the TPMS failed to perform. Thus, a reasonable trier of fact could determine that the TPMS warning system "did not perform as intended" and infer that such a performance failure would not ordinarily occur in the absence of a defect.   *See Jarvis v. Ford Motor Co.,* 283 F.3d 33, 44 (2d Cir. 2002); *see also* Restatement § 3 (1998).   Defendant argues that

---

[8] When a plaintiff's theory of negligence is the same as a theory for strict products liability, the two claims are "functionally synonymous."  *See Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 (N.Y. 1995).   The Court should view them as "duplicate[s]" of each other.  *Adams v. Genie Indus., Inc.*, 14 N.Y.3d 535, 545 (N.Y. 2010); *see also Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 887 (E.D.N.Y. 2018) (collecting cases) ("Under New York law, a Plaintiff's claim based upon an alleged design defect or manufacturing defect sounding in either negligence or strict liability are functionally equivalent and will be analyzed concurrently.").

because Plaintiff presented no "expert evidence regarding the components in the TPMS and their functioning" and "no expert evidence that the TPMS was even capable of malfunctioning, under what circumstances it might malfunction, or why either would be so," the jury's verdict "could only have been the result of conjecture and speculation," and Defendant is thus entitled to judgment as a matter of law.  (ECF No. 220 at 8.)

First, it is a settled principle of New York law that a plaintiff in a products liability action is not required to prove a specific defect when a defect may be inferred from proof that the product did not perform as intended by the manufacturer. *Jarvis*, 283 F.3d at 44.  The Second Circuit has expressly applied New York Court of Appeals law that a "plaintiff's failure to prove why a product malfunctioned does not necessarily prevent a plaintiff from showing that the product was 'defective,'" and that "[p]roof of necessary facts may be circumstantial." *Id*. (citing and quoting *Codling v. Paglia*, 298 N.E.2d 622 (N.Y. 1973).)

Second, Defendant not only successfully moved to preclude expert testimony, but also appears to concede that there is no strict requirement for expert testimony when proceeding under a circumstantial theory of manufacturing or design defect.  (ECF No. 220 at 8.)  Comments to the Restatement also (1) confirm that there is no strict requirement for expert testimony when proceeding under a circumstantial theory, and (2) provide examples of cases

without expert testimony. Restatement § 3. There is no requirement that a plaintiff even prove what aspect of the product was defective, further demonstrating that expert analysis of how a product malfunctioned is not necessary in connection with circumstantial evidence supporting an inference of a product defect. *See id.*; *see also Jarvis*, 283 F.3d at 45 ("The precise defect need not be named and proved; it is sufficient if the cumulation of circumstances and inferences . . . supports the conclusion that there was a defect which caused the accident." (quoting *Hunter v. Ford Motor Co.*, 325 N.Y.S.2d 469, 471 (3d Dep't 1971)). Defendant has not cited any controlling case law that requires expert testimony even in circumstantial cases.

Accordingly, the Court concludes that, despite the lack of an expert witness, the direct and circumstantial evidence at trial was sufficient for a jury to find by a preponderance of the evidence that "the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff: (a) was of a kind that ordinarily occurs as a result of product defect; and (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution." Restatement § 3.

It is reasonable that the jury considered and credited Ms. Sobers's account of her familiarity with the Subject Vehicle

27

and her route, the failure of the TPMS light to illuminate, and the ensuing sudden steering instability and combustion of the Subject Vehicle.   Based on the evidence, the jury could find Plaintiff proved by a preponderance of the evidence "that the product did not perform as intended and exclude[d] all other causes for the product's failure that are not attributable to [the] defendants." *Riegel v. Medtronic, Inc.*, 451 F.3d 104, 125 (2d Cir. 2006). With regard to causation, the jury considered evidence that both parties agreed that the fire was caused by an underinflated tire, as discussed above.   The jury was to decide whether the TPMS light malfunctioned and considered testimony by Ms. Sobers that she never saw a TPMS warning light before the fire in the Subject Vehicle.  The jury reasonably credited Ms. Sobers's testimony that the TPMS light never illuminated to warn her of the underinflation of the Subject Vehicle's tire.   The jury also considered the parties' stipulated fact that "[t]he cause of the fire was the result of operating the [Subject Vehicle] with run-flat tires while the right rear tire was in a deflated condition. Driving on the deflated tire eventually caused the tire to shred apart and ignite as a result of friction."  (ECF Nos. 202, Joint Stipulations of Fact at 4; *see also* Tr. at 66-67.)

As discussed, *supra*, Ms. Sobers recalled on the night of the accident stopping to purchase gas, and that she did not "notice anything unusual about the tire at the time" or "notice any warning

lights on the dashboard of the vehicle." (Tr. at 287-88.) Ms. Sobers testified that later when the steering locked and pulled back and forth, and she pulled over, there were no warning lights "during [the] span of time from when the vehicle started misbehaving to when [she] pulled over." (*Id.* at 293-94.) She reported on an SOS call that, at the moment, "the only thing that [she] had visibly seen on the dashboard [was] that the coolant level [was] low." (*Id.* at 297.) A few minutes later, a truck driver pulled over and told her to exit the car, and Ms. Sobers testified to seeing smoke as she jumped out, and "seconds later the car exploded." (*Id.* at 298.) It is plausible that a jury considered all of the evidence - including (1) Defendant's documents about how the TPMS in the Subject Vehicle *should* have functioned; (2) evidence that underinflated run flat tires could "overheat and can lead to fire failure," (*id.* at 68), and that underinflation may not be visible on visual inspection; and (3) testimony from Ms. Sobers that there was no "illumination of the TPMS low tire pressure telltale," (*id.*) - before the jury concluded that based on a preponderance of circumstantial evidence, Plaintiff proved its claims for manufacturing and design defect and negligence.

Accordingly, the Court finds that the evidence at trial, including direct and circumstantial evidence, was sufficient for the jury to return a verdict in favor of Plaintiff and against

Defendant, on both Count III and IV, and denies Defendant's motion for judgment as a matter of law.

V.   **Defendant's Rule 59 Motion For a New Trial**

   a. **Rule 59(a)(1)(A) Legal Standard**

Defendant moves for a new trial and to amend the judgment pursuant to Fed. R. Civ. P. 59(a)(1)(A) and (e).  Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure provides that a "[t]he court may, on motion, grant a new trial on all or some of the issues – and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  Rule 59(a)(1)(A) permits a party to grant a new trial [if] the verdict is against the weight of the evidence.  *See Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012).  "[A] decision is against the weight of the evidence . . . if and only if the verdict is [(1)] seriously erroneous or [(2)] a miscarriage of justice."  *Id.* at 417-18 (*citing Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002)).   "A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."  *Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*, 290 F.3d 98, 106 (2d Cir. 2002) (internal quotation marks omitted).

The standard applied in reviewing a party's motion for a new trial "depends on whether that party objected contemporaneously to the purported errors." *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005). Where objections have been preserved through contemporaneous objection, a new trial is warranted if "the district court committed errors that were a 'clear abuse of discretion' that were 'clearly prejudicial to the outcome of the trial.'" *Id.* (quoting *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 17 (2d Cir. 1996)); *see also Vogelfang v. Riverhead Cnty. Jail*, No. 04-CV-1727 (SJF), 2012 WL 1450560, at *6 (E.D.N.Y. Apr. 19, 2012) (same).

Where claimed errors were not preserved by objections contemporaneously at trial, "a new trial will be granted only for error that was 'so serious and flagrant that it goes to the very integrity of the trial'," because "failure to object deprives the trial court of the opportunity to correct the error during trial." *Marcic*, 397 F.3d at 124 (quoting *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 51 (2d Cir. 1998)); *see also Lore v. City of Syracuse*, 670 F.3d 127, 160 (2d Cir. 2012) (internal citations omitted) (party's failure to object at trial to substance of verdict form "waives its right to a new trial on that ground and [party] has no right to object to such matters on appeal . . . unless the error is fundamental").

Federal Rule of Civil Procedure 59(e) "allows a litigant to file a 'motion to alter or amend a judgment.'" *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (quoting Fed. R. Civ. P. 59 (e)). "A party may move for [Rule 59] reconsideration and obtain relief only when the party identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (brackets omitted).

Courts must bear in mind that a Rule 59 motion may be granted only "when the jury's verdict is egregious." *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 134 (2d Cir. 1998) (internal quotation marks and citation omitted). "Accordingly, a court should rarely disturb a jury's evaluation of a witness's credibility." *Id.* "[W]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Raedle*, 670 F.3d at 418 (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992)).

Importantly, a party may not use Rule 59 to cure a failure to comply with Rules 50 and 51. *NG Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 96-97 (2d Cir. 2014) ("[W]e do not believe that the Rule permits a party to obtain judgment as a matter of law under Rule 59(e) after failing to comply with the

carefully crafted structure and standards of Rules 50 and 51
. . . . Permitting a party out of compliance with Rules 50 and 51
to prevail under Rule 59(e) would render those Rules, which are
basic to the conduct of federal trials, essentially superfluous.")
A Rule 50 motion is intended to notify the opposing party of a
challenge to the sufficiency of the evidence. *Id*.   Rule 51
requires the parties to make objections prior to the reading of
jury charges during a trial so that the trial court has an
opportunity to cure any defects in the instruction before the jury
is charged and begins deliberating. *Id*. at 97.

Rule 59(e) motions are not vehicles for parties to
relitigate cases or advance new theories that they failed to raise
in their underlying motion practice. *Banister*, 140 S. Ct. at 1703;
*see also Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)
("It is well-settled that Rule 59 is not a vehicle for . . . taking
a 'second bite at the apple[.]'").   Reducing or amending the
judgment pursuant to Rule 59(e) is "an extraordinary remedy to be
employed sparingly in the interests of finality and conservation
of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec.
Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (quotation
omitted).

Based on the foregoing Second Circuit guidance, where
the Court has found that Defendant waived a basis or argument for
its Rule 50 motion, the Court will not now consider the same basis

in reviewing Defendant's Rule 59 motion. The Court reviews Defendant's Rule 59(a)(1)(A) and Rule 59(e) motion under the Second Circuit's standards, as follows.

### b. **Application**

In its Rule 59(a)(1)(A) motion, Defendant argues that the Court should grant a new trial because "substantial errors and irregularities in the proceedings and jury instructions prevented a fair trial, and the jury's verdict was against the clear weight of the evidence and contrary to established law." (ECF No. 221-1 at 3.) Specifically, Defendant argues that the Court issued faulty jury instructions regarding Plaintiff's claims of manufacturing and design defect and negligence; erroneously allowed the jury to consider circumstantial evidence; and did not charge the jury with five instructions proposed by Defendant. (*Id.* at 4–7.) Defendant also asserts that the Court issued faulty jury instructions on circumstantial evidence that improperly shifted the burden of proof to Defendant. (*Id.* at 7–8.) Defendant further contends (1) that the Court made erroneous evidentiary rulings by allowing Ms. Sobers to testify to her familiarity and experience with run flat tires and tire pressure monitoring systems, including TPMS lights, (*id.* at 8–9); (2) that Plaintiff's counsel made improper arguments on the issue of comparative fault during closing summations, (*id.* at 10–12); and (3) that a new trial should be ordered because Plaintiff failed to establish that it owned much of the subject

34

inventory that was destroyed in the Subject Vehicle fire. (*Id.* at 12-14.) Plaintiff opposed the motion on February 3, 2023, and Defendant filed a reply on February 17, 2023. (ECF Nos. 226, 230, 231.)

Although challenges to jury instructions in civil cases are generally reviewed for "an error that is not harmless," if "the challenging party failed to object to the charge at trial," including the failure to provide a proposed instruction, the instructions are reviewed for "plain error, that is, if the error 'affects substantial rights.'" *Rasanen v. Doe*, 723 F.3d 325, 331-32 (2d Cir. 2013) (quoting Fed. R. Civ. P. 51(d)(2)). "[A] jury instruction will be deemed adequate if the charge, taken as a whole, is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it." *Id.* (*quoting Hathaway, v. Coughlin*, 99 F.3d 550, 554 (2d Cir. 1996)). Conversely, "a jury charge is erroneous if it misleads the jury as to the correct legal standard, or if it does not adequately inform the jury of the law." *Keeling v. Hars*, 809 F.3d 43, 51-52 (2d Cir. 2015) (*quoting Hathaway*, 99 F.3d at 552 (considering unpreserved objection in a copyright context)). "To constitute plain error, 'a court's action must contravene an established rule of law,' and 'go to the very essence of the case.'" *Rasanen*, 723 F.3d at 333 (alteration omitted) (quoting *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 483 (2d Cir. 2001) and *Anderson v. Branen*, 17

F.3d 552, 556 (2d Cir. 1994)).  The plain error exception to Rule 51's objection requirement "should only be invoked with extreme caution in the civil context." *Keeling*, 809 F.3d at 52 (quoting *Rasanen*, 723 F.3d at 333).

In this case, the parties had ample opportunity to comment on the instructions before they were read to the jury. The parties submitted proposed jury instructions as part of their joint pre-trial orders. (ECF No. 181).  The parties were provided with the Court's proposed jury instructions in advance of the charging conference to review and discuss with the Court any modifications, corrections, and objections they might have. (ECF No. 205, Proposed Jury Instructions and Verdict Form.)  On December 8, 2022, after the Court provided its proposed jury charges to the parties, the Court held a charging conference with the parties, in which the Court conducted a page-by-page review of the proposed charges and directed the parties to advise the Court if they had any objections, corrections, or proposed modifications.   The parties were welcome and expected to identify and request that the Court include any of the proposed instructions of both parties. (Tr. at 807-09.)  Defendant did not object to or argue that the proposed charges omitted Defendant's proposed instructions or erroneously stated the law, as it now asserts in its Rule 59 motion.  (*Id.* at 807-70.)  At the end of the charging conference, the Court asked again if the parties had any more objections, and

Defendant stated that it had raised all issues with respect to the jury instructions, and both parties confirmed that they had nothing else to raise with the Court. (*Id.* at 852, 870-71.) The Court advised the parties that a revised set of jury charges and the verdict sheet – which incorporated the discussions at the charging conference – would be posted to the docket, and encouraged the parties to review the revisions and advise the Court if anything had been omitted. (*Id.* at 871.)

Defendant's memorandum in support of its Rule 59 motion first challenges the use of circumstantial evidence to prove manufacturing or design defect and negligence at trial; specifically lists five instructions that Defendant previously submitted but did not ask the Court to add at the charging conference; and contends that the Court's circumstantial evidence instruction improperly shifted the burden of proof to Defendant. (ECF No. 221-1 at 4-7.) In its opposition memorandum, Plaintiff has helpfully numbered each of Defendant's arguments and addressed each of Defendant's instruction-related complaints. (ECF No. 226 at 7-12.) For the sake of clarity, the Court will utilize the same numerical designations.

Federal Rule of Civil Procedure 51(c)(1) states that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Because Defendant

did not object at the charging conference to the Court's omission of Defendant's proposed instructions – identified herein as Issues 2 through 7 - the Court will review Defendant's contentions for plain error. *See* Fed. R. Civ. P. 51(d)(2)("A court may consider a plain error in the instructions that has not been preserved . . . if the error affects substantial rights."  In other words, the Court will consider whether Defendant's unpreserved objections to the omission of the six jury instructions constitutes an error that is "so serious and flagrant that it goes to the very integrity of the trial." *Marcic*, 397 F.3d at 124 (internal quotation marks and citation omitted.)

The Court will first review Defendant's challenges to circumstantial evidence and burden of proof, designated as Issues 1 and 8 respectively. (ECF No. 226 at 7-8, 11-12.)  For Defendant's contentions regarding Issues 1 and 8, specifically its arguments that the Court erred in allowing the case to proceed on a theory of circumstantial evidence and the Court's alleged erroneous shifting of the burden of proof, the Court will consider if the instruction presented a "clear abuse of discretion" that was "clearly prejudicial to the outcome of the trial." *Marcic*, 397 F.3d at 124.

> *a) Circumstantial Evidence of Manufacturing/Design Defect and Negligence (Issue 1)*

Defendant repeatedly asserts that, "[t]he Court should not have instructed the jury at all on circumstantial proof of defect . . . . That error was compounded and the prejudice cemented when the Court further erred by not giving certain of the defendant's proposed instructions." (ECF No. 221-1 at 5.)  Yet in Defendant's renewed Rule 50(b) motion for judgment notwithstanding the verdict, and again in Defendant's Rule 59 motion, Defendant provides no case law for its argument that the case could not proceed to trial on, and a jury could not consider, a circumstantial theory of manufacturing/design defect and negligence.[9]  As an initial matter, the Court notes that Defendant, throughout trial, acknowledged and appeared to try the case based on a theory of circumstantial evidence.[10]  *See United States v. Kosinski*, 976 F.3d 135, 153 (2d Cir. 2020) ("[I]f a party invited the charge . . . [he] has waived any right to appellate review of the charge." (quoting *United States v. Giovanelli*, 464 F.3d 346, 351 (2d Cir. 2006))).  That is no surprise, as Judge Glasser's

---

[9] "THE COURT: You would agree that if the jury found the witness credible that the light did not come on . . . a jury could find that the defendant was liable, correct? / MR. DURNEY: I do not agree with that, your Honor, I understand the ruling. / THE COURT: What case law do you have? /MR. DURNEY: I understand the ruling in this case on this motion for summary judgment, but I don't necessarily agree that we would not, at some point, have an opportunity . . . were there to be an adverse verdict to challenge the denial of the motion for summary judgment."  (Tr. at 588.)

[10] "MR. DURNEY: Just for your Honor's edification. Mr. Yeldham . . . was identified as an expert. And the Court will recall that there was a time when there was a significant back and forth between the plaintiff and the defendants with respect to the design issues and that's no longer part of the case which is why the case is proceeding under circumstantial evidence."  (Tr. at 25.)

finely reasoned decision notified the parties that the trial could proceed on circumstantial evidence to establish liability on the theories of manufacturing and design defect and negligence, (ECF No. 97 at 37-39), and the parties tried the case accordingly.

In any case, as thoroughly discussed in Judge Glasser's decision precluding Plaintiff's defect and causation expert and denying Defendant summary judgment, New York law allows the parties to present circumstantial evidence at trial, and there is no requirement under New York law to have an expert testify regarding a manufacturing or design defect claim, and negligence claim. (*Id.*) Moreover, to the extent that an expert would have been beneficial at trial, the parties stipulated to the fact the fire was caused by continuing to drive the Subject Vehicle with an underinflated tire, and that the defect alleged in this case is that the TPMS light did not illuminate and thus did not perform as intended. (ECF No. 192, Pre-trial Order Stipulations at 11-15.) The Court also notes that Defendant could not have been prejudiced from the lack of an expert on *Plaintiff*'s side, as Defendant had successfully precluded Plaintiff's defect/causation expert, and as Defendant had every opportunity to present its own expert, point out to the jury the weakness of Plaintiff's case, and challenge the credibility of Plaintiff's witnesses.

The Court's circumstantial evidence instruction is consistent with New York law. With respect to circumstantial

evidence, the Court instructed in its preliminary and final instructions:

> There are two kinds of evidence that are appropriately considered, direct and circumstantial evidence. Direct evidence is direct proof of a fact, such as testimony of an eyewitness. Circumstantial evidence is proof of facts from which you may infer and conclude other facts. I will give you further instructions on these as well as other matters at the end of the case, but keep in mind that you may consider both kinds of evidence. It will up to you, the jurors, to decide which witnesses to believe, which witnesses not to believe, and how much of any witness's testimony to accept or reject. I will give you some guidelines for determining the credibility of witnesses at the end of the case.

(Tr. at 34.)

As discussed above, Judge Glasser granted Defendant's motion to preclude Plaintiff's expert, and provided a detailed legal analysis as to why Plaintiff was entitled to proceed to trial on the basis of circumstantial evidence on its manufacturing or design defect and negligence claims. (ECF No. 97); *see also Zsa Zsa Jewels, Inc. v. BMW of N. Am.*, LLC, 419 F. Supp. 3d 490, 517 (E.D.N.Y. 2019). Judge Glasser correctly reasoned:

> To prevail on the bases of circumstantial evidence, Plaintiff must first establish that the incident that caused its harm 'was of a kind that ordinarily occurs as a result of product defect.' It has done so here. Ms. Sobers's testimony, if credited, establishing that the Subject Vehicle's TPMS failed to emit a low tire pressure warning at any point prior

> to the fire, which, all parties agree was
> caused by a lack of adequate air pressure.

*Id.* at 37.

Judge Glasser held that a reasonable trier of fact could determine that the TPMS, "did not perform as intended," and could "infer that such a malfunction would not ordinarily occur in the absence of a defect." *Id.* at 37-38 (citation omitted). Defendant did not have the burden of proof, but had every opportunity to "offer[] some evidence in admissible form establishing that the plaintiff's injuries were not caused by a . . . defect in the product" and did not do so. (*Id.* at 21.) Defendant focused on attacking the credibility of Ms. Sobers's driving experience and her account of the accident and inventory. The jury presumably weighed the evidence, assessed the trial witnesses' credibility, and drew inferences. That Defendant failed to undermine the credibility of Ms. Sobers's testimony does not mean that the Court abused its discretion by allowing the case to proceed on a circumstantial theory consistent with New York Law. Moreover, Defendant did not present any controlling case law to support its argument that the case could not proceed with circumstantial evidence to establish liability.

### b) Burden of Proof (Issue 8)

Defendant asserts that the Court's circumstantial evidence instruction improperly shifted the burden of proof to

Defendant.   (ECF No. 221-1 at 7-8.)   Though the Court notes Defendant did not raise this issue at any point during the charging conference, (Tr. at 807-870), Defendant states in its Rule 59 reply papers that it objected at trial when it objected to the Court's circumstantial evidence instruction.   (ECF No. 231 at 4.) Notwithstanding that Defendant attempts to bootstrap its unpreserved burden shifting argument to its objection to circumstantial evidence being admitted to prove or disprove Plaintiff's case, the Court finds that the jury instructions did not improperly shift the burden of proof to Defendant.   To the contrary, at trial, without objection from Defendant, the Court's jury charges explicitly, properly, and repeatedly instructed the jury on the burden of proof, no less than four times:

> This is a civil case and, as such, the plaintiff has the burden of proving the material allegations of its complaint by a preponderance of the evidence.   To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not.   A preponderance of the evidence means the greater weight of the evidence.   It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or the number of documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called that witness, and all the exhibits received in evidence regardless of who may have offered them [in evidence.]
>
> If you find that the credible evidence on a given issue is evenly divided between the

> plaintiff's view and the defendant's — that it
> is equally probable that one side is right as
> it is that the other side is right — then you
> must decide that issue against the plaintiff
> because remember: the plaintiff must prove a
> case by a preponderance of the evidence.
> Plaintiff bears the burden of proof to prove
> more than simple equality of the evidence.
> The plaintiff must prove each element by a
> preponderance of the evidence. On the other
> hand, the plaintiff need prove no more than a
> preponderance. So long as you find that the
> scales tip, however slightly, in favor of
> plaintiff, then that element will have been
> proved by a preponderance of evidence.

(Tr. at 940-41.)

> A product may be defective as a result of a
> manufacturing flaw or a defective design.
> Plaintiff bears the burden of proving that the
> product was defectively manufactured or
> designed and that the defect was a substantial
> factor in causing plaintiff's claimed damages.
>
> . . .
>
> The burden of proving that the product was
> defective and that the defect was a
> substantial factor in causing plaintiff's
> damages is on the plaintiff.

(*Id.* at 950-51.)

> In order to prevail, the plaintiff must
> sustain its burden of proof by a preponderance
> of the evidence as I have explained to you
> with respect to each element of the strict
> liability and negligence claims.

(*Id.* at 961.)

Insofar as Defendant now claims that the instruction

erroneously shifted the burden of proof, it is clear that Defendant

has confused the burden of producing evidence with the burden of

44

proof. The Court's instruction (to which Defendant did not specifically object at the charging conference) applied the correct legal standard for Defendant's burden to offer evidence, as follows:

> To prevail on its manufacturing and design defect claim, based on circumstantial evidence, the plaintiff must first establish that the incident that caused its damages was of a kind that ordinarily occurs as a result of a product defect. If you find that plaintiff has established that the incident was of a kind that ordinarily occurs as a result of a design or manufacturing defect, defendant bears the burden of offering some evidence in admissible form establishing that the plaintiff's damages were not caused by a manufacturing or design defect in the product.

(ECF No. 206 at 26.)

Here, the jury appears to have credited Ms. Sobers's testimony that the Subject Vehicle's TPMS failed to emit a low tire pressure warning prior to the fire, which the parties stipulated was caused by an underinflated tire. Thus, the jury also appears to have found that Plaintiff established that the vehicle fire was the kind of incident that normally occurs as a result of a product defect. *Cf. Sanchez v. Stanley-Bostitch, Inc.*, No. 98-cv-494 (LMM), 2000 WL 968776, at *3 (S.D.N.Y. July 13, 2000) (citing *Graham v. Walter S. Pratt & Sons*, 271 A.D. 2d 854, 854 (3d. Dep't 2000)*; (see also* ECF No. 97 at 39 ("But with all due respect to Defendant, it is they who misunderstand the burden of proof. As previously stated, and as numerous courts have held,

once a plaintiff establishes that the incident occurred under circumstances ordinarily caused by a defective product, the burden falls on the defendant to proffer an alternative explanation." (collecting cases)).)

As the Supreme Court observed, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973); *see, e.g., Victor v. Nebraska*, 511 U.S. 1, 5 (1994) ("Taken as a whole, the instructions must correctly convey the [burden of proof] to the jury.") (citation omitted) (cleaned up).

The Court finds that, based on the totality of its instructions, the jury understood that Plaintiff had the burden to prove by a preponderance of the evidence that the TPMS "did not perform as intended and exclude all other causes for the product's failure that are not attributable to [the] defendants." *Riegel*, 451 F.3d at 125; *see United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014) ("We review a jury instruction challenge *de novo*, but we will reverse only where the charge, viewed as a whole, demonstrates prejudicial error."); *see also Liriano v. Hobart Corp.*, 170 F.3d 264, 271 (2d Cir. 1999) ("When a defendant's negligent act is deemed wrongful precisely because it has a strong propensity to cause the type of injury that ensued, that very causal tendency is evidence enough to establish a *prima facie* case

46

of cause-in-fact.  The burden then shifts to the *defendant* to come forward with evidence that its negligence was *not* such a but-for cause." (emphasis in original)).   Furthermore, the jurors expressed no confusion, and sent no notes seeking clarification of the Court's instructions on the burden of proof.  *See Nat'l R.R. Passenger Corp. v. One 25,900 Square Foot More or Less Parcel of Land*, 766 F.2d 685, 688 (2d Cir. 1985) ("A charge that appears likely to have left the jury 'highly confused' may, on that ground alone, be reversed.")  Notwithstanding that Defendant did not object to the specific "burden of production of evidence" instruction that it now challenges, or to any other instruction regarding the burden of proof at trial, the Court's clear and repeated instructions about Plaintiff's burden of proof correctly conveyed to the jury that Plaintiff had the burden to prove its claims.  The Court concludes that there was neither "plain error" affecting the "substantial rights" of Defendant, nor were the instructions "clearly prejudicial to the outcome of the trial." The Court finds that there is no reason to alter, amend, or vacate the judgment or order a new trial on this issue.

> *c) Other Jury Instructions (Issues 2-7)*

The remaining challenges by Defendant to the Court's jury instructions do not require the granting of a new trial. Again, the Court notes that because Defendant did not specifically object to the Court's jury instructions or ask the Court at the

charging conference to include any of the instructions it now claims were erroneously included, the Court will apply a plain error analysis.  (Tr. at 807-870); *see United States v. Miller*, 954 F.3d 551, 557 (2d Cir. 2020); *Caruso v. Forslund,* 47 F.3d 27, 30-31 (2d Cir. 1995) ("Federal Rule of Civil Procedure 51 provides that '[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.'"); *see also Pescatore,* 97 F.3d at 18 (2d Cir. 1996) ("Only where an unpreserved 'error [is] so serious and flagrant that it goes to the very integrity of the trial' will a new civil trial be warranted.") Defendant argues that the Court "refused to give instructions [designated as Issues 2-7] which are appropriate and routine in product liability cases." (ECF No. 221-1 at 5.)  Because the Court provided draft instructions for the parties to review before the charging conference, and also provided revised instructions after the charging conference before the jury was charged, Defendant knew that the Court had declined to include those proposed instructions, which Defendant provided to the Court in its pre-trial papers.  Defendant did not object to the omission of the instructions during the charging conference, thus failing to contemporaneously object at trial and preserve its objections. *See Marcic,* 397 F.3d 120 at 124.  Despite claiming the instructions

are "routine in product liability cases," Defendant failed to provide any other examples from other trials in which the instructions were included.  Nor does Defendant provided citations to the New York Pattern Jury Instructions, or to controlling authority, to supports its contention that failure to charge the jury with the following instructions constitutes error that is so "serious and flagrant that it goes to the very integrity of the trial." (ECF No. 221-1 at 5.)

The Court notes that the Second Circuit has recognized that the trial court "enjoys broad discretion in crafting its instructions[,] which is only circumscribed by the requirement that the charge be fair to both sides." *United States v. Coplan*, 703 F.3d 46, 87 (2d Cir. 2012) (citation omitted) (citation omitted).  Defendant does not, nor could it, claim that the instructions were unfair.  A defendant challenging a district court's refusal to give a requested jury instruction carries the "heavy burden.... [of showing] that his proposed charge accurately represented the law in every respect, and that the charge actually given, viewed as a whole, prejudiced him." *United States v. Feliciano*, 223 F.3d 102, 116 (2d Cir. 2000) (internal quotation marks and citation omitted).

1. *Manufacturing / Design Defect Instructions (Issue 2)*

Defendant argues that the Court's instructions failed to properly define a manufacturing and design defect, as requested by Defendant, thereby leading the jury to speculate on the core legal and factual issues in the case.  (ECF No. 221-1 at 5.)  Contrary to Defendant's baseless contention, the Court gave the following instructions, modeled after the New York Pattern Jury Instructions 2:65 and 2:120:

> A product may be defective as a result of a manufacturing flaw. The burden of proving that the product was defective and that the defect was a substantial factor in causing the plaintiff's damages is on the plaintiff.
>
> . . .
>
> It is not necessary to find that the defendant knew or should have known of the product's potential for causing damages in order for you to determine that it was not reasonably safe. It is sufficient that a reasonable person who did, in fact, know of the product's potential for causing damages would have concluded that the product should not have been marketed in that condition.
>
> . . .
>
> A product is defectively designed if a reasonable person who knew or should have known of the product's potential for causing damages would have concluded that the product should not have been marketed in that condition. It is not necessary to find that the defendant knew of the product's potential for causing damages in order for you to decide that it was defectively designed. It is sufficient that a reasonable person who did, in fact, know of the product's potential for causing damages would have concluded that the

> product should not have been marketed in that
> condition.
>
> . . .
>
> You may conclude that BMW is responsible for
> a manufacturing or design defect based upon
> your application of the principles discussed,
> which I will explain further below. You may
> infer that the harm sustained by the plaintiff
> was caused by a manufacturing or design defect
> existing at the time of sale or distribution
> without proof of a specific defect when the
> incident that harmed the plaintiff was of a
> kind that ordinarily occurs as a result of the
> product defect and was not in the particular
> case solely the result of causes other than
> the product defect existing at the time of
> sale or distribution.

(Tr. at 951-54.)

Notwithstanding Defendant's lack of objections to these instructions, the Court notes that there is also sufficient instruction on design or manufacturing defect under a theory of circumstantial evidence. (*Id.* at 810-14, 953-54.)

> *2. Instructions about Manufacturers and*
> *Distributors/Safety Standards (Issues 3-5)*

Defendant also contends that the Court should have charged the jury with the following instructions:

> A manufacturer or distributor is not required
> to produce a product that is invincible,
> accident free, foolproof, or failsafe. (Issue
> 3)
>
> Nor is a manufacturer of a product an insurer
> or guarantor of the safety of a product's
> user. (Issue 4)

> You may consider the compliance of the BMW X3
> and its Tire Pressure Monitoring System with
> Federal Motor Vehicle Safety Standards in
> determining whether the product was reasonably
> safe as designed. (Issue 5)

(ECF No. 221-1 at 5-6.)

Defendant has not provided legal authority to establish that the Court was required by controlling law to include the foregoing jury charges at trial. *Coplan*, 703 F.3d at 87 (holding that the only "requirement [is] that the charge be fair to both sides"). Again, Defendant neither objected to, (Tr. at 807-70), nor provided controlling authority stating that the Court was required to give the instructions designated as Issues 3-5. Jury instructions are erroneous if they "mislead the jury as to the correct legal standard or do not adequately inform the jury of the law." *United States v. Mitchell*, 811 F. App'x 50, 52 (2d Cir. 2020) (summary order) (citation omitted). Omissions of certain jury instructions do not automatically mislead or inadequately inform the jury of the law. Though Defendant's motions correctly state that it cited legal authority for its proposed instructions, Defendant does not contend that the cited legal authority is controlling or required that Defendant's proposed instructions must be given to the jury. Defendant did not submit a single sample pattern jury instruction that included its proposed instructions, nor supporting case law requiring that the instructions be given.

Moreover, Defendant fails to show how the Court's omission (to which Defendant did not object) of Defendant's specific proposed instructions constitutes manifest injustice, given the entirety of the Court's instructions about the elements of — and Plaintiff's burden of proof on — Plaintiff's products liability and negligence claims. *See, e.g., Hudson v. New York City*, 271 F.3d 62, 67-68 (2d Cir. 2001) (noting that, in deciding whether jury instructions are prejudicially erroneous or highly confusing, "[objectionable instructions are considered in the context of the entire jury charge"). Defendant fails to explain how the lack of these specific instructions substantially impaired its ability to defend against Plaintiff's claims, or how Defendant's proposed instructions "accurately represented the law in every respect, and that the charge actually given, viewed as a whole, prejudiced [Defendant]." *Feliciano*, 223 F.3d at 116. In fact, with regard to Issue 5, Defendant did not even submit evidence at trial that its TPMS complied with the Federal Motor Vehicle Safety Standards to support this proposed instruction. Accordingly, the Court finds that the omission of Defendant's proposed instructions designated as Issues 3-5 does not constitute fundamental error that goes to the integrity of the trial.

> *3. Comparative Fault Instructions/Duty of Care Instructions (Issue 6)*

Notwithstanding the absence of Defendant's objection at any time before the jury was charged, Defendant contends that the Court should have instructed the jury that, "[w]hen the plaintiff's claim of causation is speculative, conjectural or the probabilities of causation are at best evenly balanced, you must find that the plaintiff did not meet its burden of proof." (ECF No. 221-1 at 6.) Again, Defendant's proposed instructions provided no controlling authority and Defendant's Rule 59 motion fails to acknowledge that it did not object to the omission of this instruction at trial.  In any event, the Court instructed the jury that if the evidence was evenly balanced on any issue, the jury must find against Plaintiff on its claims, stating:

> If you find that the credible evidence on a given issue is evenly divided between the plaintiff's view and the defendant's, that it is equally probable that one side is right as it is that the other side is right, then you must decide that issue against the plaintiff because remember; the plaintiff must prove a case by a preponderance of the evidence.

(Tr. at 941.)

Furthermore, the Court instructed the jury on comparative fault as follows:

> If you find that the alleged defect in the BMW X3 was a substantial factor in causing plaintiff's damages, then you will proceed to consider whether there was negligence on the part of [Plaintiff] or its employees that contributed to its injuries . . . . The burden of proving that plaintiff's negligence contributed to its injuries is on defendant.

54

In this regard, you will consider whether at the time of the occurrence the BMW X3 was being misused, whether plaintiff in the use of reasonable care could have realized and avoided its danger, and whether plaintiff, by the use of reasonable care, could have otherwise avoided its own damages.

. . . .

Weighing all the facts and circumstances you must consider the total responsibility — that is, the responsibility of both the plaintiff and defendant — that contributed to causing the damages and decide what percentage is chargeable to each. In your verdict, you will state the percentages that you find. The total of these percentages must equal one hundred percent. I will furnish you with a verdict sheet on which you will write these percentages . . . .

For example, if you should find that the defendant and the plaintiff were equally at fault, you would report that each was fifty percent responsible. If you should find that one party was more at fault, you will assign a higher percentage to that party and a lower percentage to the other with a total of the percentages equaling one hundred percent.

(Tr. at 956-58.)

Therefore, the Court instructed the jury, that if the parties are "evenly divided," it must find against Plaintiff, because it did not meet its burden of proof by a preponderance of the evidence.   Moreover, the Court instructed the jury on comparative fault, even if it did not adopt verbatim the language that Defendant requested.

4. *Owner's or Operator's Duty of Care (Issue 7)*

Defendant also argues that the Court's jury charge should have included: "An owner or operator's duty of care encompasses the duty to reasonably inspect the motor vehicle for defects and ensure the vehicle is in a proper, maintained condition and that a vehicle not be operated with worn out or damaged components." (ECF No. 221-1 at 7.) Instead, the Court instructed the jury:

> "In this regard, you will consider whether at the time of the occurrence the BMW X3 was being misused, whether plaintiff in the use of reasonable care could have realized and avoided its danger and whether plaintiff, by the use of reasonable care, could have otherwise avoided its own damages. . . . If you find the BMW X3 was misused, that plaintiff in light of reasonable care could have realized and avoided the danger and that plaintiff or its employees in the use of reasonable care could otherwise have avoided its damages, then you must apportion the responsibility of plaintiff and defendant for causing plaintiff's damages."

(Tr. at 956-57.) Again, Defendant did not object to the Court's instructions, which encompassed the owner's/operator's duty of care. The Court finds that there was no "plain error" in not adopting verbatim Defendant's proposed instruction above, that the integrity of the trial was not compromised, and that the Court's instructions repeatedly emphasized the relevant burden of proof and comparative fault standards.

d) *Evidentiary Rulings and Closing Arguments*

Defendant also argues that the Court erred when it allowed Plaintiff to elicit testimony from Ms. Sobers about her

prior experiences with tire pressure monitoring systems. Defendant argues that the "erroneous admission of this evidence cannot be deemed harmless because it was the only evidence presented by plaintiff to meet its burden of proving causation." (ECF No. 221-1 at 9.)  The Court finds Defendant's argument to be frivolous, as it was *Defendant* who stated its intention to present evidence and arguments highlighting Ms. Sobers's young age and lack of driving experience in order to suggest Plaintiff's comparative fault.  (Tr. at 57-60 (Defendant's opening statements); ECF No. 153-1, Def. Mem. of Law in Support of Motion *in Limine* to Preclude Any Evidence Regarding the "Authorized Users" of the [Subject] Vehicle.)  Defendant cannot expect that the Court should allow only one party to attack the credibility of a witness without allowing brief questions to elicit testimony to counter the evidence.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Though it is true that, when ruling on a motion for a new trial, a judge is obliged to weigh credibility and conflicting evidence, and must consider the probative force of all the evidence, the Court nonetheless, finds that it did not err in allowing both parties to present evidence about Ms. Sobers's credibility and driving experience at trial. *See DePascale v. Sylvania Elec. Prods., Inc.*, 510 F. App'x 77, 79

(2d Cir. 2013) (summary order) ("Where resolution of the issues at trial depends on an assessment of the credibility of witnesses, district courts should be particularly cognizant of the danger of usurping the jury's function.") (citation omitted and emphasis added).

Moreover, the Court respectfully further rejects as frivolous Defendant's argument that *because* evidence regarding Ms. Sobers's driving experience and familiarity with TPMS is relevant to causation, the Court should not have permitted the evidence. Ms. Sobers testified that she had rented Ford and Chevrolet vehicles and had observed TPMS warning lights or notices come on while she had been driving "multiple times." (Tr. at 276, 397-98.) After Defendant objected, the Court permitted Ms. Sobers to testify to two instances and permitted Defendant, on cross-examination, to elicit her testimony about whether any of the vehicles involved a BMW model similar to the one at issue. (Tr. at 407-08.) Ms. Sobers was the *only* direct witness with knowledge at trial who could testify about whether the TPMS in the Subject Vehicle emitted a warning, and testified that she could recognize if the TPMS light was illuminated at any time on the night of the fire. The Court finds that Mr. Sobers's experience and familiarity with TPMS system lights, and the Subject Vehicle, was relevant to the jury's assessment of her credibility.

The Court further finds Defendant's request for a new trial based on Plaintiff's counsel's summation, (ECF No. 221-2 at 10-11), are also frivolous.  Defendant argues that counsel's arguments on comparative fault confused the jury and prejudiced Defendant by "misle[ading] the jurors into thinking that they were not to consider any of that evidence which was critical to the defendant's comparative fault case." (*Id.*)  The Court instructed the jury multiple times that counsel's arguments about credibility, the evidence, or comparative fault[11] during summations were not evidence that the jury could consider in deciding the case.  (Tr. at 925, 929-31, 935-36.)

Moreover, there was evidence in the record that Defendant distributed the Subject Vehicle.  The Court granted Defendant's request to admit the lease agreement with Plaintiff and the Catalanos regarding the Subject Vehicle, and evidence of the Catalanos' reliance on Ms. Sobers to drive the Subject Vehicle. (ECF No. 171.)  Defendant had, and used, opportunities to cross-examine the witnesses about the terms of the lease agreement and the Catalanos' willingness to let Ms. Sobers drive the Subject Vehicle.  (Tr. at 140-41.)  Defendant also argued in its opening

---

[11] Defendant takes issue that Plaintiff's counsel argued during summation: "Here's also what this case is not about. It's not about whether the company that Meena Catalano leased the [Subject Vehicle] from, which is not a party to this case, would think she breached the lease agreement by letting her employee drive the car. If the car was defective, the car was defective. It doesn't matter who was driving it especially when it comes to [Defendant's] liability for putting that vehicle into commerce."  (ECF No. 221-1 at 11.)

statement and summations about Meena Catalano entrusting Ms. Sobers to drive, alone at night in the Subject Vehicle loaded with Plaintiff's jewelry, and argued that Ms. Sobers was a young and inexperienced driver. (*Id.* at 59, 902-04.)  In any event, the Court repeatedly instructed the jury during counsel's summations and in charging the jury that arguments by counsel are not evidence. (*Id.* at 925, 929-31, 935-36.)  Accordingly, the Court disagrees that it should have prevented Plaintiff's counsel from making these arguments in Plaintiff's summation.

e) *Damages*

Finally, based on the trial evidence, the Court disagrees with Defendant's arguments that Plaintiff essentially received a windfall by recovering damages for any consigned goods included in Plaintiff's lost inventory. (*See* ECF No. 221-1 at 12.)  In fact, evidence of Plaintiff's financials and inventory were discussed at length during trial, and the jury returned a damages verdict after having an opportunity to weigh that evidence. Defendant called its own two witnesses to challenge Plaintiff's evidence regarding the value of Plaintiff's lost inventory and cast doubt on Plaintiff's accounting.  Ms. Sobers and the Catalanos also provided testimony as to the consigned goods and how they calculated the value of the lost inventory. (Tr. at 84-85, 188-202, 260-73.)  The jury had sufficient evidence to consider in

deciding what amount of damages Plaintiff should or should not receive.

The Court also denies Defendant's separate Rule 60(b)(5) request prior to entry of judgment, and as incorporated into Defendant's Rule 59 motion, to reduce, set off, or vacate the judgment amount of damages. (ECF No. 221-1 at 14 n.1, incorporating by reference Defendant's previous requests for a Rule 60(b)(5) evidentiary hearing). Defendant's Rule 59 motion incorporated by reference Defendant's anticipated Rule 60(b)(5) motion to reduce or vacate damages based on Meena Catalano's testimony that "some" of the lost inventory was on consignment and based on evidence related to Plaintiff's tax returns. Whether to grant a hearing on such a motion, is within the discretion of the court. *See Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 Fed. App'x 40, 45 (2d Cir. 2014) (summary order) (noting the abuse of discretion standard for denial of request for evidentiary hearing); *see also Saada v. Golan*, No. 21-876-CV, 2021 WL 4824129, at *3 (2d Cir. Oct. 18, 2021) ("In the Rule 60(b) context, a party is not automatically entitled to an evidentiary hearing."). Under Rule 60(b)(5), a court may relieve a party from a final judgment "[o]n motion and just terms" if "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Moreover, Defendant

is not automatically entitled to an evidentiary hearing on its
60(b)(5) motion, especially here, where Defendant had a full
opportunity to raise the issues at trial. *See Saada*, 2021 WL
4824129, at *1, *3 (Rule 60(b) evidentiary hearings should be held
to decide disputes concerning "material issues of fact." *See Flaks
v. Koegel*, 504 F.2d 702, 712 (2d Cir. 1974). The Court is not
persuaded there are any remaining material issues of fact that the
parties did not have a full opportunity to discover and present
for the jury's decision at trial.

The Court reminds Defendant that "Rule 60(b) may not be
used to 'relitigate matters settled by the original judgment.'"
*Frankel v. ICD Holdings S.A.*, 939 F. Supp. 1124, 1127 (S.D.N.Y.
1996) (quoting *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 60
(2d Cir. 1984)). Rule 60(b) relief "is generally not favored and
is properly granted only upon a showing of exceptional
circumstances." *United States v. Int'l Bhd. of Teamsters*, 247
F.3d 370, 391 (2d Cir. 2001). The burden to show exceptional
circumstances rests on the party seeking Rule 60(b)(5) relief.
*Id*. Defendant has not demonstrated such exceptional circumstances
here. Though Defendant has not been clear whether its motion rests
on the existence of "newly discovered evidence," in such a
scenario, a movant must demonstrate that: (1) the newly discovered
evidence was of facts that existed at the time of trial or other
dispositive proceeding, (2) the movant must have been justifiably

62

ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching. *Id.* at 392. Defendant has not met any of the foregoing requirements.

Ms. Catalano did not testify that Plaintiff did not own the jewelry destroyed by the fire in the Subject Vehicle. Instead, she testified that Plaintiff had not paid for 80-90 percent of Plaintiff's lost inventory in the Subject Vehicle and that "some" of the jewelry was "given on consignment." (Tr. at 188-89.) Indeed, Defendant's Rule 59 memorandum acknowledges that Plaintiff "steadfastly maintained ownership over the total merchandise within the [Subject Vehicle] at the time of loss." (ECF No. 221-1 at 13.) Defendant misreads Ms. Catalano's testimony in arguing that the damages verdict should be vacated, or a new trial should be ordered, or alternatively the judgment should be reduced or amended, based on Defendant's erroneous view that most of the host jewelry was on consignment. (ECF No. 221-1 at 12-14.) Moreover, Defendant cites the deposition of Ms. Sobers, who testified that Plaintiff did not engage in any consignment at all. (*Id.*) But this testimony undercuts Defendant's position. Further, Defendant did not cross-examine Meena Catalano or Ms. Sobers about the unpaid inventory that Plaintiff owed its suppliers, or about the amount and value of "some" of the jewelry that was consigned.

Defendant's Rule 59 motion asserts a windfall based on Plaintiff's tax returns, and "incorporates by reference its arguments raised in previous filings under Rule 60(b) related to Defendant's request for a hearing on the issue of a judgment "set off" for tax benefits "improperly received by the plaintiff." Defendant's Rule 60(b) motion had reserved the right "to raise the tax benefit issue as a basis for a new trial or amendment of the judgment following the Court's decision on [Defendant's] pending request for a hearing," and the Court addresses Defendant's motions pursuant to Rule 59 and 60.  (ECF No. 221-1 at n. 1.)  The Court respectfully denies Defendant's Rule 59 and Rule 60 motions regarding inventory and tax benefit issues because the jury heard testimony from Plaintiff's accountant, Defendant's accounting witness, the Catalanos, and Ms. Sobers, and had Plaintiff's tax returns from 2010 to 2016, in deciding their verdict and awarding damages to Plaintiff.  Defendant had every opportunity to cross-examine and argue to the jury about inventory for which Plaintiff owed payment, the amount of consigned inventory, and Plaintiff's purported tax issues, and how that evidence should have factored into the final damages amount.  But Defendant's decision not to do so at trial should not now be revisited in the guise of an additional post-trial hearing or new trial.  Moreover, Defendant did not move under Rule 50(a) on the consignment and tax issues and cannot circumvent this failure by invoking Rule 50(b), Rule

59, or Rule 60.  The Court finds that arguments by Defendant in its various motions before the Court under Rules 50, 59, and 60, fail to meet any of the legal standards to grant relief. Accordingly, the Court denies Defendant's request to grant a new trial or to alter the judgment with respect to these issues Defendant belatedly raises.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's motions pursuant to Rule 50(b),59, and 60.


**SO ORDERED.**


Dated:     May 15, 2023
           Brooklyn, New York

                                    _____

                                    **KIYO A. MATSUMOTO**

                                    United States District Court
                                    Eastern District of New York